In re Achim M. KULLING and Helmut H. Steinhausen.

No. 89–1516.

United States Court of Appeals, Federal Circuit.

March 8, 1990.

Robert G. Mukai, Burns, Doane, Swecker & Mathis, of Alexandria, Va., argued, for appellant.

Harris A. Pitlick, Associate Sol., Office of the Sol., of Arlington, Va., argued for appellee. With him on the brief was Fred E. McKelvey, Sol.

Before NIES, Circuit Judge, BENNETT, Senior Circuit Judge, and ARCHER, Circuit Judge.

ARCHER, Circuit Judge.

Achim M. Kulling and Helmut H. Steinhausen (Kulling) appeal the decision of the United States Patent Office (PTO) Board of Patent Appeals & Interferences (Board) affirming the examiner's rejection under 35 U.S.C. § 103 (1982 & Supp. II 1984) of all

24 claims of their patent application. We affirm.

## Background

Claim 1 [1] of Kulling's patent application is directed to a process for the treatment of a dilute iron (II) sulfate-containing sulfuric acid solution resulting from the hydrolysis of a titanyl sulfate solution in the production of titanium dioxide. The process is intended to achieve a high recovery of sulfuric acid while minimizing the amount of recovered contaminants (metal sulfates, chromium and vanadium) so that acid may be recycled for further titanium dioxide production.

The treatment process is basically comprised of five steps:

(a) concentrating the dilute iron (II) sulfate-containing sulfuric acid solution to obtain a suspension of the precipitated metal sulfate in sulfuric acid;

(b) centrifuging the suspension in a screen centrifuge to separate the precipitated sulfates from the acid solution;

(c) pre-washing the retained solids with 2 to 4% by volume of the feed solution to step (a) with respect to the volume of the original suspension;

(d) washing the retained solids with 1 to 2% by volume of water with respect to the volume of the original suspension; and

(e) recycling the filtrates of washing steps (c) and (d) either for use in the production of titanium dioxide and/or the solution treatment process.

The examiner rejected Kulling's claims on the basis of Christensen, United States Patent No. 2,001,409, in view of any one of several secondary references. In his Examiner's Answer, the examiner described Christensen as follows:

Christensen discloses the treatment of liquors from the production of TiO$_2$ from ilmenite ores starting on page 8 column 1, line 53 to page 9 column 1, lines [sic] 38 which is discussed inconjunction [sic] with his figure 6. In this process the acidic iron sulfate solution formed by the hydrolysis in 35 and separated in 37 is supplied to concentrator 38 where it is concentrated to form ferrous sulfate slurried in 60% acid. This 60% slurry is then separated into a filtrate and a cake in 39 and 40. A portion of the separated 60% acid from 39 or 40 may be returned to the concentrator to secure a fluid pulp which can be efficiently handled by the apparatus. The cake is washed on item 40 to remove residual acid on the cake using a combination of iron sulfate containing solutions and wash liquor. Christensen page 5 column 2, lines 15–20 states that item 40 can be either a filter or a centrifuge and washing can be done in both types of apparatus.

Accordingly Christensen fairly shows the overall combination of the instant claims to include the concentration of the same feed solution, separation by centrifuging of the solids from the concentrated solution, washing of the separated solids using a plural wash, and recycle of the filtrates from the centrifuging to the concentrator which is part of the treatment of the solution and also recycle of the separated concentrated acid to the production of titanium dioxide.

Christensen does not show the specific use of a portion of the feed liquor to the concentrator to wash the filter cake although one of the wash liquors used by Christensen is an [sic] ferrous sulfate solution as is the feed solution to the concentrator. Christensen also does not specifically recite the numerical quantities of wash liquors used in the instant claims.

Notwithstanding these deficiencies of Christensen's disclosure, the examiner concluded that the claimed invention would have been obvious to one of skill in the art because the secondary references, Miller (U.S. Patent No. 3,273,959), Arnold, et al. (U.S. Patent No. 4,291,002), Hellmers, et al. (U.S. Patent No. 3,260,567), and Pike (U.S. Patent No. 2,798,790), disclosed the "use of a portion of the feed solution to wash the centrifuge cake" and because:

---

1. Since Kulling has not separately argued the merits of dependent claims 2–24, they stand or fall with independent claim 1. *In re Kaslow*, 707 F.2d 1366, 1376 (Fed. Cir.1983).

[t]he determination of the precise amount [of] wash solution and water used in the wash is a matter of routine optimization obvious to one of ordinary skill in the art balancing normal considerations of the purity of the washed cake required, the loss of cake via dissolution into the wash liquor. Increased washing increases the purity of the cake, the amount of wash liquors required, the amount of cake dissolved and the quantity of spent wash liquor to be processed.

On appeal, the Board affirmed the examiner and, in doing so, adopted the reasoning expressed in his Answer.

## OPINION

The issue in this appeal is whether the Board erred in holding that claims 1–24 of Kulling's patent application were unpatentable under 35 U.S.C. § 103. Although an obviousness determination *per se* is a question of law which we review *de novo*, it is based upon underlying factual inquiries concerning the claimed invention and the prior art, which predicate findings are binding on this court unless shown to be clearly erroneous. *See In re Caveney*, 761 F.2d 671, 674 (Fed.Cir.1985).

We have reviewed the examiner's analysis and findings with respect to the prior art which the Board adopted and are unpersuaded that those findings are clearly erroneous. Further, we agree that they lead to the conclusion that Kulling's claimed process would have been obvious to one skilled in the art.

The Board determined that the teachings of the secondary references would have motivated the skilled artisan to use the concentrator feed solution as the pre-wash eluent in the process disclosed by Christensen. Its conclusion was based on the similarity between these two solutions in the Christensen process and the teaching of the secondary art wherein the feed solution is also used as an eluent. We find no error in the Board's finding that the secondary references, despite their relation to other specific but analogous chemical processes, provide an ample suggestion to bridge any factual "shortcoming" of Christensen. It

is admitted by Kulling that in the Miller process the trona feed solution is also utilized as the eluent in the wash sequence. Although Miller's specific process is designed to recover the contents of the filter cake rather than the filtrate, it clearly suggests that when the wash solution is equivalent to an earlier existing solution, the latter may be used as a source for the former. The teaching of Miller is sufficient to support the Board's conclusion.

In addition, the Board found that the amount of eluent to be used in the washing sequence was a matter of routine optimization in the pertinent art. Kulling has not shown this finding to be clearly erroneous and, further, it is fully supported by Christensen's disclosure concerning the need to avoid undue amounts of wash solution. While this discussion is in relation to Christensen's ore treatment process, it is apparent that Christensen discloses that the wash sequence for the solution treatment process could be the same. Indeed, in describing the wash treatment for Fig. 4, Christensen expressly refers to his earlier discussion of the Fig. 3 wash sequence. *See* page 6, col. 1, line 58—col. 2, line 30 ("as previously described").

Kulling argues the claims are patentable because only minimal amounts of chromium and vanadium are extracted from the filter cake when the wash volumes are limited as set forth in claim 1. However, "objective evidence of nonobviousness must be commensurate in scope with the claims." *In re Lindner*, 457 F.2d 506, 508 (CCPA 1972). Here, the rejected claims read on a process for treating solutions which contain neither chromium nor vanadium as there is no indication, either in the claims, in the specification, or otherwise, that either chromium or vanadium is or must be present in the dilute iron (II) sulfate-containing sulfuric acid solution to which the claimed process is directed. Accordingly, as the Board correctly noted, Kulling cannot rely upon the minimal extraction of chromium or vanadium as an unexpected benefit to support the patentability of his claims.

Although Kulling argues to the contrary, the Board adopted the examiner's finding

that Christensen suggests the use of a "screen centrifuge" as the separating apparatus that may be used to separate the precipitated sulfates and the acid filtrate. We have reviewed the Christensen disclosure and conclude that the Board's finding is not clearly erroneous. Although Christensen's "centrifugal filter of proper design" is referred to in connection with the ore treatment process, a centrifuging apparatus is disclosed as useful in the treatment of sulfuric acid solutions as well. *See* page 6, col. 1, lines 58–65.

Kulling's other challenges to the Board's decision, all of which we have considered, fall short of establishing error on the part of the Board. In the absence of evidence of *nonobviousness*, we agree that Kulling's process would have been obvious to the skilled artisan and, accordingly, the Board's decision is

AFFIRMED.