**The GILLETTE COMPANY,**
**Plaintiff–Appellant,**

v.

**S.C. JOHNSON & SON, INC.,**
**Defendant–Appellee.**

**No. 90–1320.**

United States Court of Appeals,
Federal Circuit.

Nov. 20, 1990.

Robert E. Hillman, Fish & Richardson, Boston, Mass., argued for plaintiff-appellant. With him on the brief were Robert W. Furlong, Gregory A. Madera and Heidi E. Harvey.

Robert L. Baechtold, Fitzpatrick, Cella, Harper & Scinto, New York City, argued for defendant-appellee. With him on the brief were Henry J. Renk and Nicholas N. Kallas.

Before RICH, NEWMAN, and CLEVENGER, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the July 31, 1989 judgment of the U.S. District Court for the District of Massachusetts (Collings, U.S. M.),[1] holding claims 1, 3, 8–10, 12–18 and 21–23 of Patent No. 3,541,581 to Monson on a shaving preparation not invalid under 35 USC 103 and infringed by the Gillette Company (Gillette). *See Gillette Co. v. S.C. Johnson & Son, Inc.,* 12 USPQ2d 1929, 1989 WL 87374 (D.Mass.1989), *reconsider-*

---

1. By consent of the parties, the case was referred to the United States Magistrate for trial and entry of judgment pursuant to 28 USC 636(c). We refer herein to the opinions of the magistrate as those of the district court.

*ation denied,* 15 USPQ2d 1795, 1990 WL 36143 (D.Mass.1990). Gillette appeals only on validity and does not contest infringement. We affirm.

## I. BACKGROUND

S.C. Johnson & Son (Johnson) is assignee of the Monson patent, which issued November 17, 1970 and is now expired. Although the patent title is "Package Containing A Post–Foaming Gel," the claims are drawn to a "stable, post-foaming gel" composition. The term "post-foaming" means that the claimed composition remains a gel as it is expelled from its container but foams up after it is spread over the user's skin. Johnson has marketed a commercial embodiment of the claimed composition under the well-known EDGE trademark since 1970.

Although claims 1, 3, 8–10, 12–18 and 21–23 are appealed, claim 1 is representative and will suffice for our purposes. Claim 1 reads:

1. A cleansing or cosmetic composition in the form of a stable, post-fo[a]ming gel consisting essentially of about 40–90% by weight water, about 4–25% by weight water-soluble soap, about 0.5–12% by weight volatile liquid post-foaming agent selected from the group consisting of saturated aliphatic hydrocarbons, halogenated hydrocarbons and mixtures thereof, and about 0.01–5% by weight of at least one water-soluble gelling agent which forms in said composition, a gel having a yield value sufficiently high to substantially restrain said composition from foaming for at least about 60 seconds, under static ambient conditions.

The controversy here revolves around the "water-soluble gelling agent" component of the claimed composition, which according to Monson's specification can be chosen from "water-soluble derivatives of naturally occurring substances such as cellulose, sucrose and glucose." As further disclosed by Monson, the gelling agent functions to modify the consistency of the composition by imparting "yield value," or flow resistance. The resulting solid state properties of the gel restrain its foaming

for a desired period of time, i.e., for about 60 seconds at 63° F. and one atmosphere. In preferred embodiments of the claimed composition wherein the gelling agent is a cellulose derivative, the water-soluble gelling agent also functions to enhance lubricity, allowing the shaving blade to glide across the user's skin with reduced friction.

During prosecution of the application for the Monson patent, the Patent and Trademark Office (PTO) examiner initially rejected the claims as obvious in view of Estignard–Bluard (Bluard) (U.S. Patent No. 2,995,521) and Friedenberg (U.S. Patent No. 3,240,396). Bluard discloses a "self-foaming" composition which can be formulated to have the consistency of a cream; gel-based compositions are not disclosed. Like Monson's, Bluard's composition can be thought of as "post-foaming" in that it spontaneously foams when spread over a user's skin. It includes soap, water, and foaming agent, as does Monson's. However, Bluard's composition does not contain a *water*-soluble gelling agent; he uses an *oil*-soluble "jellifying" agent, namely aluminum octoate. Bluard discloses that when saponaceous [i.e., soapy] compositions having the consistency of a cream are used (for example, shaving creams), it is preferable to "thicken the organic liquid [foaming agent] by means of a jellifying agent," in order to "avoid any separation of the organic liquid and the thick saponaceous composition during storage or use. . . ." Thus, Bluard's jellifying agent is intended to thicken the organic phase, not the aqueous phase, of his self-foaming composition.

Friedenberg discloses that colloidal materials including certain cellulose derivatives are useful as stabilizers in shaving creams or shampoos formulated as "very dilute emulsions" of at least 75%, preferably 85%, water. Friedenberg does not disclose the use of these colloidal materials in a gel-based composition, nor in a post-foaming composition.

British Patent Specification No. 838,913 to Colgate–Palmolive (Colgate) was also cited by the examiner to "show the state of the art." Colgate discloses the addition of

colloidal materials such as cellulose derivatives to "soap solutions of low concentration," so as to stabilize the lather of the disclosed "aerosol shave creams."

The examiner initially took the position that it would have been obvious to one skilled in the art to "substitute the claimed jellifying agents, i.e. colloids," for the jellifying agent [aluminum octoate] shown in Bluard, in view of Friedenberg, "who show[s] said agents are well known for the same purpose in the same type of compositions[,] i.e. forming shaving compositions."

In response to the initial rejection, Johnson submitted results of consumer testing in which the formulation of Example 1 of Monson was unanimously preferred by a panel of shavers over a modified Monson formulation wherein Bluard's aluminum octoate had been substituted for the claimed water-soluble gelling agent. A second panel unanimously preferred the Monson formulation over a "self-foaming shaving cream" formulated according to Example 11 of Bluard. Eight out of nine members of a third panel preferred the Monson formulation over another "self-foaming shaving cream" formulated according to Example 10 of Bluard. After considering these showings, the examiner allowed the Monson application.[2] Johnson's resulting EDGE gel product went on to become an overwhelming commercial success; the district court found that EDGE accounted for more than 20% of the market for shaving products at the time of trial. *Gillette*, 12 USPQ2d at 1962.

Johnson sued Gillette on September 1, 1983, in the Northern District of Illinois, charging infringement of the Monson patent by Gillette's "Foamy Gel" product. Gillette in turn brought a declaratory judgment action of invalidity and unenforceability against Johnson in the District of Massachusetts. The Illinois action was transferred to Massachusetts and consolidated with the suit there, where trial took place. After the bench trial, Magistrate Collings

held in a very thorough opinion that Gillette had failed to prove that the Monson patent was invalid on the ground of obviousness, that Gillette had infringed by its manufacture, use, and sale of "Foamy Gel," that the infringement was willful, and that the case was "exceptional" under 35 USC 285, such that the court was authorized to award attorney fees to Johnson. *Id.* at 1964. Gillette then moved for reconsideration of the decision. In his memorandum opinion of March 28, 1990, fully answering Gillette's arguments, Magistrate Collings denied Gillette's motion and reaffirmed his holdings. *See* 15 USPQ2d at 1795. This appeal followed. Damages have yet to be determined.

This court previously upheld the validity of the Monson patent in *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 228 USPQ 367 (Fed.Cir.1986). Gillette was not a party to the *Carter–Wallace* litigation. The primary reference before the trial court there was, as here, the Bluard patent. The Friedenberg patent was also considered, as well as other secondary references not involved in this suit. *See S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 614 F.Supp. 1278, 1299–1301, 225 USPQ 1022, 1034–36 (S.D.N.Y.1985) (holding that Carter–Wallace had failed to sustain its burden of proving facts which support a conclusion of obviousness by clear and convincing evidence).

## II. ISSUES

1. Whether the district court erred in its application of 35 USC 103 to the facts of this case.

2. Whether Johnson should be awarded its attorney fees and expenses incurred in opposing this appeal.

## III. DISCUSSION

### 1. Standard of Review

▪▪▪▪ The claims of Monson are entitled to a presumption of validity and Gillette

---

**2.** As the district court found,

> Johnson's tests demonstrated that Monson's product was, in fact, superior or produced results superior to any of Bluard's formula-

tions. There was no evidence offered at trial which would support a contrary conclusion. *Gillette,* 12 USPQ2d at 1960.

faces the burden of showing, by clear and convincing evidence, their invalidity. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359, 220 USPQ 763, 770 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). This burden is not lessened by Gillette's introduction at trial of prior art not before the PTO during prosecution. *Id.* at 1358–60, 220 USPQ at 770–71. The fact that the validity of those claims has previously been upheld in an earlier litigation is also to be given weight, though not *stare decisis* effect. *See Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 711, 218 USPQ 969, 974 (Fed.Cir.1983).

The only district court conclusion on appeal here is the determination of nonobviousness. Our precedent holds that the question of obviousness is one of law, freely reviewable by this court. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 762, 9 USPQ2d 1417, 1421 (Fed.Cir.1988) ("the trial court's conclusion on obviousness is subject to full and independent review by this court."), *cert. denied*, — U.S. —, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989); *Gardner v. TEC Systems, Inc.*, 725 F.2d 1338, 1344, 220 USPQ 777, 782 (Fed.Cir.) ("A conclusion on obviousness is one of law and subject to full and independent review in this court."), *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 60 (1984); *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573, 220 USPQ 584, 589 (Fed. Cir.1984) ("this court reviews the issue of obviousness as one of law on which it must exercise independent judgment....").

## 2. Validity

The crux of Gillette's appeal is that the district court misapplied 35 USC 103 by adopting an overly stringent test for obviousness. More specifically, Gillette urges that the district court, in reliance on *Kimberly–Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 223 USPQ 603 (Fed.Cir. 1984), committed legal error by requiring that a claimed combination be "clearly suggested" by the prior art in order to be obvious. In Gillette's view, this "clear suggestion" test is tantamount to requiring an explicit statement of the claimed subject matter, which would rebut novelty altogether. We did not go that far in *Kimberly–Clark*, nor do we now.

Gillette ignores the fact that in *Kimberly–Clark*, not only did we "fail to find a clear suggestion of the claimed subject matter," 745 F.2d at 1449, 223 USPQ at 610, we found "not the slightest suggestion" in the art of the claimed dual function adhesive. *Id.* at 1447, 223 USPQ at 609. Similarly, the district court in this case found *no* suggestion in the prior art, much less a clear suggestion, of the claimed composition viewed as a whole as it must be under § 103. *See Gillette*, 12 USPQ2d at 1953, 1956.

As to whether "clear suggestion" is a proper test of obviousness, we note initially that *Kimberly–Clark* is not the only instance in which we have made use of that phrase in a discussion of obviousness.[3]

---

**3.** *See, e.g., In re Kulling*, 897 F.2d 1147, 1149, 14 USPQ2d 1056, 1058 (Fed.Cir.1990) ("Although Miller's specific process is designed to recover the contents of the filter cake rather than the filtrate, it *clearly suggests* that when the wash solution is equivalent to an earlier existing solution, the latter may be used as a source for the former"); *In re Beaver*, 893 F.2d 329, 331, 13 USPQ2d 1409, 1411 (Fed.Cir.1989) (Nies, J., dissenting) ("I agree with the board that the references *clearly suggest* that the film magazine be interlocked in alignment with the focal plane of the lens"); *Ryco, Inc. v. Ag–Bag Corp.*, 857 F.2d 1418, 1425, 8 USPQ2d 1323, 1329 (Fed.Cir.1988) ("This teaching of the Nikkel patent, when considered with the Silopress machine, *clearly suggests* the substitution of the curved stripper bars for the stripper basket"); *Vandenberg v. Dairy Equipment Co.*, 740 F.2d 1560, 1568, 224 USPQ 195, 199 (Fed.Cir.1984) ("Thus, the prior art *clearly* teaches and *suggests* the combination of all the elements found in the '575 patent"); *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 890, 221 USPQ 1025, 1032 (Fed.Cir.1984) ("Nevertheless, such a removable cap is *clearly suggested* by the Avrea patent in combination with prior art patents to Woodward and Kateley which do show removable caps which could effect such a function, though not involving removable retraction stems"); *In re Kronig*, 539 F.2d 1300, 1304, 190 USPQ 425, 428 (CCPA 1976) ("Obviousness under 35 U.S.C. § 103 does not require absolute predictability, ... and it is sufficient here that Yasui et al. *clearly suggests* doing what appellants have done, viz., adding water") (citations omitted); *In re Gershon*, 372 F.2d 535, 539, 152 USPQ 602, 605 (CCPA 1967) ("We think it is sufficient that the prior art *clearly suggests* do-

Various other formulations of the requisite level of suggestion for combining prior art disclosures have been set forth in our precedent. For example, we have said that "[o]bviousness does not require absolute predictability of success.... For obviousness under § 103, all that is required is a reasonable expectation of success." *In re O'Farrell*, 853 F.2d 894, 903–04, 7 USPQ2d 1673, 1681 (Fed.Cir.1988).

We need not decide here whether "clear suggestion" is an overly rigorous test for obviousness, however. As noted above, this court independently reviews obviousness determinations. In reaching our own conclusion regarding obviousness, we need not give deference to a particular analytical construct utilized in a district court's opinion. Our task is to review the district court's *judgment.*

What we stressed in *Kimberly–Clark*, and have repeated many times since, was that 35 USC 103 requires analysis of a claimed invention *as a whole:*

> It is true that [the claimed invention] consists of a combination of old elements so arranged as to perform certain related functions. It is immaterial to the issue, however, that all of the elements were old in other contexts. *What must be found obvious to defeat the patent is the claimed combination.*

745 F.2d at 1448, 223 USPQ at 609–10 (emphasis added). Focusing on the obviousness of substitutions and differences, instead of on the invention as a whole, is a legally improper way to simplify the often difficult determination of obviousness. *Hybritech, Inc. v. Monoclonal Antibodies,* *Inc.,* 802 F.2d 1367, 1383, 231 USPQ 81, 93 (Fed.Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987).

Here, the "claimed combination" is a composition whose individual components were concededly well known at the time of the invention. As the district court found, however, the prior art made no suggestion, *clear or otherwise,* of substituting the claimed water-soluble polymers for Bluard's oil-soluble jellifying agent; nothing in the prior art suggested the idea of a post-foaming shaving *gel,* much less one in which water-soluble polymers were used.

Gillette argues that prior art references such as Friedenberg, Colgate, and U.S. Patent No. 3,072,535 to Mueller would provide the necessary motivation to one of ordinary skill to make the suggested substitution. While these references do disclose the use of water-soluble polymers in shaving preparations, none of those preparations appears to be a gel.[4] Moreover, none are post-foaming in nature. *See Gillette,* 12 USPQ2d at 1947.

In any event, the Bluard patent, which is the closest prior art and the only reference to disclose a post-foaming preparation, would likely *discourage* the art worker from attempting the substitution suggested by Gillette. Bluard recommends using aluminum octoate to thicken the organic phase in order to make it compatible with a thick aqueous soap phase. Contrary to the district court's understanding,[5] water-soluble polymers would not serve this purpose in Bluard's composition. Insofar as the district court's "understanding" was a finding of fact, we set it aside as clearly erro-

---

ing what appellants have done, although an underlying explanation of exactly why this should be done, other than to obtain the expected superior beneficial results, is not taught or suggested in the cited references.") (Emphases all ours.)

4. Counsel at oral argument disagreed on whether the Friedenberg and Colgate references disclosed gels. At trial, however, when Gillette's own expert, Dr. Schwartz, was asked whether the Friedenberg composition was a gel or a liquid, he answered that it was a liquid. When asked whether the Colgate patent disclosed a liquid or a gel, Dr. Schwartz again answered, "a liquid."

5. Although the district court recognized a fundamental difference between the compositions of Monson and Bluard, i.e. that Monson's gelling agent is present in the aqueous phase of his composition, while Bluard's "jellifying agent" is added to the organic liquid [foaming agent], the court failed to see the significance of this fact. We refer to the court's statement that "[a]lthough the suggested 'jellifying agent', i.e. aluminum octoate, was water-insoluble, so far as I can understand, it was not its water-insolubility which caused it to perform the functions for which Bluard employed it." *Gillette,* 12 USPQ2d at 1947.

neous under Fed.R.Civ.P. 52(a). We agree with Johnson that the oil-solubility and water-insolubility of aluminum octoate is critical to Bluard's purpose of thickening the organic phase.

Johnson takes the position that, at most, the substitution suggested by Gillette may be "obvious to try." As we recently explained,

> [a]n "obvious-to-try" situation exists when a general disclosure may pique the scientist's curiosity, such that further investigation might be done as a result of the disclosure, but the disclosure itself does not contain a sufficient teaching of how to obtain the desired result, or that the claimed result would be obtained if certain directions were pursued.

*In re Eli Lilly & Co.*, 902 F.2d 943, 945, 14 USPQ2d 1741, 1743 (Fed.Cir.1990). However, we have consistently held that "obvious to try" is not to be equated with obviousness under 35 USC 103. *See O'Farrell*, 853 F.2d at 903, 7 USPQ2d at 1680; *Hybritech*, 802 F.2d at 1380, 231 USPQ at 91; *Jones v. Hardy*, 727 F.2d 1524, 1530, 220 USPQ 1021, 1026 (Fed.Cir.1984).

An analysis of obviousness of a claimed combination must include consideration of the results achieved by that combination. As we explained in *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1143, 227 USPQ 543, 551 (Fed.Cir.1985):

> Critical to the analysis is an understanding of the particular results achieved by the new combination. The claims here at issue are directed to a combination of known components of telephone systems in an admittedly new way to achieve a new total system. Neither the district court in its opinion, nor the defendants, identified any suggestion in the prior art that the components be combined as they were by Feil or that such combination could achieve the advantages of the Feil system.

We see no reason why the above reasoning from *Interconnect*, a case that dealt with a mechanical invention, should not apply with equal weight to the present chemical case. There is no question that each component of Monson's composition was separately known in the prior art. What was not known or suggested, however, was the composition that resulted from the combination of those components, and its unique properties. As Johnson succinctly states,

> The Monson invention is a post-foaming gel composed of four components, all of which interact to provide a particular kind of gel with suitable shaving characteristics—in fact, shaving properties superior to any other product on the market. The invention as a whole is that composition, with its gel form, and its properties.

These superior properties resulting from Monson's invention have not been questioned by Gillette.

Gillette's counsel urged at oral argument that commercial considerations are not "what makes patentability." To the contrary, an analysis of obviousness *must* address objective evidence of nonobviousness, if any. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). Objective evidence such as commercial success, failure of others, long-felt need, and unexpected results must be considered before a conclusion of obviousness is reached. *Hybritech*, 802 F.2d at 1380, 231 USPQ at 90.

We hold that the objective evidence of Johnson's commercial success with EDGE supports the nonobviousness of Monson's claims. As the district court found, "Johnson's product was new; nothing like it had been marketed before. It was radically different from any other shaving product on the market." 12 USPQ2d at 1963. The district court also found that EDGE's success was due to the product's properties, not increased advertising. *Id.* We see no error, much less clear error, in this finding of fact. Fed.R.Civ.P. 52(a).

Gillette's counsel also asserted at oral argument that through the work of its employees Peloquin and Rader, it "had the very same technology" at the same time as Monson (though not soon enough to represent prior invention). However, Gillette abandoned further research because, it claims, it made a "commercial mistake" in

failing to recognize that this "new-fangled approach" would appeal to consumers. This mistake, Gillette argues, was not due to any technical difficulties with the Peloquin/Rader work, a point on which the record is less than clear.[6] We are not persuaded by Gillette's argument that the Peloquin/Rader work evidences the obviousness of Monson's invention. As the district court found,

> [t]he objective evidence of non-obviousness is that until the Johnson product was introduced and marketed, Gillette did not believe that a post-foaming shaving preparation such as Bluard taught would yield any better results to the shaving population than existing aerosol shaving preparations[,] regardless of whether aluminum octoate or water-soluble polymers were used as the "jellifying" agent.

*Gillette*, 12 USPQ2d at 1963. Indeed, Gillette's skepticism is relevant and persuasive evidence of the nonobviousness of Monson's invention.

We reject Gillette's remaining argument that other art-recognized advantages of cellulose-based polymers, namely lubricity and consistency enhancement, provide the "suggestion" sufficient to motivate the art worker to substitute them for Bluard's aluminum octoate. This theory boils down to no more than hindsight reconstruction, of the type so aptly described by the poet Milton over three centuries ago:

> The invention all admired, and each how he
> To be the inventor missed; so easy it seemed,
> Once found, which yet unfound most would have thought,
> Impossible!

PARADISE LOST, Part VI, L. 478–501.

In sum, we hold that the district court properly applied the law of 35 USC 103 to the facts of this case.

### 3. Attorney Fees

Johnson seeks reimbursement of its attorney fees and expenses for this appeal

pursuant to 35 USC 285 and Fed.R.App.P. 38. Johnson characterizes the appeal as frivolous, in that Gillette could not reasonably argue that the judgment below was based on legal error or that the district court's findings were clearly erroneous.

Upon the whole record and considering in particular the magistrate's two opinions and the arguments made by Gillette on this appeal, we conclude that the appeal cannot properly be characterized as frivolous. The case of *Mathis v. Spears*, 857 F.2d 749, 8 USPQ2d 1551 (Fed.Cir.1988) cited by Johnson was a much more aggravated situation and is clearly distinguishable on its facts. The request for attorney fees and expenses on appeal is therefore denied.

### CONCLUSION

The district court's judgment that Gillette failed to meet its burden of proving by clear and convincing evidence that the subject matter of the appealed claims would have been obvious under 35 USC 103 is affirmed. Johnson's request for attorney fees and expenses incurred by Johnson in connection with this appeal is denied.

**AFFIRMED**

---

**6.** For example, the district court's opinion states, "the evidence of Mr. Peloquin's experiments confirmed the unsatisfactory results which were obtained when Bluard's formulations were used." *Gillette*, 12 USPQ2d at 1960.