56 F.3d 84
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 In re Ken W. DONBAR, William M. Saltman and Morford C. Throckmorton.
 No. 94-1439.
 United States Court of Appeals, Federal Circuit.
 May 22, 1995.
 
 Before NIES, SCHALL, and BRYSON, Circuit Judges.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Ken W. Donbar, William M. Saltman, and Morford C. Throckmorton (Donbar) appeal the May 18, 1994 decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (Board). Ex Parte Donbar, Appeal No. 93-4394. In that decision, the Board affirmed the patent examiner's final rejection under 35 U.S.C. Sec. 103 of claims 6-12 of application serial number 07/771,023 (the '023 application) as unpatentable over prior art. We affirm.
 
 DISCUSSION
 
 2
 This court reviews de novo the Board's ultimate determination of obviousness. In re Rijckaert, 9 F.3d 1531, 1532, 28 USPQ2d 1955, 1956 (Fed. Cir. 1993). However, underlying factual questions, "such as scope and content of the prior art, differences between the prior art and the claimed invention, and level of ordinary skill in the art are reviewed for clear error." Id. Under the clearly erroneous standard of review, this court will not overturn the Board's factual findings unless we are "left with the definite and firm conviction that a mistake has been made." In re Caveney, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed. Cir. 1985).
 
 
 3
 The '023 application discloses a method for making rubber compounds in which 1-butene functions as a molecular weight control. Claim 6, the only independent claim at issue, recites a chemical process for producing cis-1,4 polybutadiene by polymerizing 1,3 butadiene monomer using a specified nickel/trialkylaluminum/hydrogen fluoride-based catalyst and 0.01 to 10.5 phm[1] of 1-butene.[2] The examiner rejected claims 6-12 under 35 U.S.C. Sec. 103 as unpatentable over United States Patent Nos. 3,856,764 and 3,985,677 to Throckmorton et al. (Throckmorton '764 and Throckmorton '677, respectively) in view of Sakata et al., Effect of Unsaturated Hydrocarbons on Polymerization of Butadiene with Nickel Catalyst, 139 Die Makromolekulare Chemie 73-81 (1970) (Sakata), Great Britain Patent No. 926,036 to Montecatini (Montecatini), and United States Patent No. 3,066,128 to Youngman (Youngman). In affirming the examiner's final rejection of claims 6-12, the Board, relying on an earlier decision in which it found similar claims unpatentable,[3] determined that claims 6-12 would have been obvious over Throckmorton '764 and '677 in view of Sakata and Montecatini. More specifically, the Board determined that these references suggested the use of the claimed concentrations of 1-butene in conjunction with the claimed catalyst for the purpose of reducing the molecular weight of cis-1,4 polybutadiene.
 
 
 4
 On appeal, Donbar contends that the references relied on by the Board do not establish a prima facie case of obviousness. In particular, Donbar contends that the Board improperly interpreted Sakata and that when Sakata is read properly, the claimed invention is not rendered obvious over Throckmorton '764 and '677 in view of Sakata and Montecatini. Donbar further contends that, even if a prima facie case of obviousness has been established, it has been overcome by affidavits which interpret the prior art and which also allege nonobviousness by virtue of secondary considerations of patentability, such as commercial success and long felt need. The Commissioner responds that we should affirm because the Board did not clearly err in interpreting the teachings of the prior art or in finding Donbar's evidence of secondary considerations to be insufficient to show patentability.
 
 
 5
 In view of the evidence of record, we hold that the Board did not clearly err in interpreting the teachings of the prior art. We also hold that the Board did not clearly err in concluding that Donbar's affidavit evidence regarding secondary considerations of patentability was insufficient to demonstrate nonobviousness. We further hold that the Board did not err as a matter of law in finding that claims 6-12 of the '023 application would have been obvious over Throckmorton '764 and '677 in view of Sakata and Montecatini.[4]
 
 
 6
 Donbar does not dispute that Throckmorton '764 and '677 disclose the same catalyst recited in the claims of the '023 application, and that they also disclose all of the limitations of those claims except for the use of 1-butene as a molecular weight reducer. Donbar likewise does not dispute that Montecatini discloses the use of 1-butene in concentrations of 20.7 phm to reduce the molecular weight of cis-1,4 polybutadiene produced using a nickel-based catalyst.
 
 
 7
 However Donbar and the Commissioner disagree over what Sakata teaches. In particular, the Commissioner contends that Sakata suggests that the addition of 1-butene in concentrations of 2.0 phm will cause a molecular weight reduction during the process recited in the claims of the '023 application. In contrast, Donbar argues that Sakata does not suggest that such a molecular weight reduction will occur and that Sakata actually teaches away from such a result.
 
 
 8
 What a prior art reference teaches is a question of fact which we review for clear error. In re Beattie, 974 F.2d 1309, 1311, 24 USPQ2d 1040, 1041 (Fed. Cir. 1992). The parties do not dispute that Sakata discloses the use of 1-butene in concentrations of 0.5 phm and 2.0 phm[5] for producing cis-1,4 polybutadiene using a catalyst which contains nickel, trialkylaluminum, and boron trifluoride. The catalyst recited in the claims of the '023 application contains nickel, trialkylaluminum and hydrogen fluoride. Thus, these two catalysts are identical except that the claims of the '023 application recite hydrogen fluoride in place of the boron trifluoride disclosed by Sakata. However, Throckmorton '677 expressly discloses that, in preparing such catalysts, hydrogen fluoride may be substituted for boron trifluoride. See Throckmorton '677 at col. 2, lines 42-45. We hold that the Board did not err in recognizing the equivalence of the recited catalyst system and the catalyst system disclosed in Sakata.[6]
 
 
 9
 Sakata's numerical data suggests that the addition of 1-butene in concentrations of 2.0 phm may cause some reduction in the molecular weight of the polymer being produced. Although certain statements in Sakata appear to contradict the results of the numerical data, these statements are somewhat ambiguous and do not rise to the level of completely negating the data's suggestion that 1-butene may act as a molecular weight reducer at concentrations of 2.0 phm. Thus, we hold that the Board did not clearly err in deciding that Sakata viewed as a whole discloses the use of 2.0 phm of 1-butene as a molecular weight reducer when used with the catalyst claimed in the '023 application.
 
 
 10
 Because Throckmorton '764 and '677, together with Sakata, suggest that 1-butene in concentrations of 2.0 phm may reduce the molecular weight of a polymer produced with the same catalyst as that recited in the claims of the '023 application, and because Montecatini expressly discloses that 1-butene in concentrations of 20.7 phm will reduce molecular weight, we uphold the Board's finding that claims 6-12 would have been obvious over Throckmorton '764 and '677, in view of Sakata and Montecatini. Thus, the Board did not err as a matter of law in determining that the claims at issue would have been obvious over the prior art.
 
 
 11
 We so hold notwithstanding Donbar's contentions and affidavit evidence regarding secondary considerations of patentability. The existence of such secondary considerations is a question of fact which we review for clear error. Specialty Composites v. Cabot Corp., 845 F.2d 981, 989-91, 6 USPQ2d 1601, 1606-08 (Fed. Cir. 1988). Upon review of the record, and especially in view of the Board's correct interpretation of the prior art, we conclude that the Board did not clearly err in its consideration of secondary considerations of patentability. We therefore hold that the Board did not err as a matter of law in determining that Donbar's method would have been obvious considering all of the evidence of record. Donbar has failed on appeal to show otherwise. Additionally, Donbar has failed to show that the claimed process provides unexpected results which are in some way more significant than those obtained in the prior art.
 
 
 12
 Each party shall bear its own costs.
 
 
 
 [1]
 Phm denotes parts per hundred parts of monomer
 
 
 [2]
 Claim 6 reads as follows:
 A process for producing high cis-1,4-polybutadiene which can be utilized in the production of automobile tires which comprises polymerizing 1,3-butadiene monomer in a solution of an aliphatic and/or cycloaliphatic or aromatic solvent system employing as a catalyst system, a mixture of (1) a nickel salt of a carboxylic acid, (2) a trialkyl aluminum compound, and (3) a hydrogen fluoride complex which is prepared by complexing hydrogen fluoride with an ether wherein the mole ratio of said trialkylaluminum compound to said nickel salt of a carboxylic acid ranges from about 2:1 to about 80:1, wherein the mole ratio of hydrogen fluoride to said nickel salt of a carboxylic acid ranges from about 3:1 to about 150:1, and wherein the mole ratio of hydrogen fluoride to the trialkylaluminum compound ranges from about 1:1 to about 10:1, said polymerization being conducted in the presence of 0.01 to 10.5 phm of 1-butene.
 Claims 7-12 depend from claim 6. As with claim 6, claims 7, 9, and 11-12 recite 1-butene concentrations of 0.01 to 10.5 phm. Claims 8 and 10, however, recite 1-butene concentrations of 0.01 to 4.5 phm, and 2 to 4.5 phm, respectively.
 
 
 [3]
 Ex Parte Donbar, Appeal No. 88-1070 (May 11, 1990)
 
 
 [4]
 Although Donbar argues on appeal that independent claim 6 is patentable, he does not separately argue the patentability of dependent claims 7-9 and 11-12. Accordingly, these claims must stand or fall with claim 6. In re Kulling, 897 F.2d 1147, 1148 n.1, 14 USPQ2d 1056, 1056 n.1 (Fed. Cir. 1990). Donbar distinguishes claim 10 from claim 6 only to the extent that claim 10 recites a smaller range of 1-butene concentrations than does claim 6 (2.0 to 4.5 phm as opposed to 0.01 to 10.5 phm). Because the narrower range of 1-butene concentrations recited in claim 10 is not significant for purposes of this appeal, claim 10 also must stand or fall with claim 6
 
 
 [5]
 The 0.5 phm and 2.0 phm concentrations of 1-butene are denoted by Sakata as 0.014 and 0.056 moles/liter, respectively
 
 
 [6]
 We note that Donbar asserts that the catalyst disclosed by Sakata is both "very similar to" and "entirely different from" that recited in the claims of the '023 application. See Appellant's Brief at 10, 21