Robert L. MENDENHALL,
Plaintiff–Appellant,

and

CMI Corporation, Plaintiff–Appellant,

v.

CEDARAPIDS, INC., Defendant/Cross–
Appellant.

Nos. 92–1236, 92–1237 and 92–1256.

United States Court of Appeals,
Federal Circuit.

Sept. 13, 1993.

Rehearing Declined; Suggestion for
Rehearing In Banc Declined
Nov. 18, 1993.

1558

Jerry J. Dunlap, Dunlap, Codding & Lee, P.C., of Oklahoma City, OK, argued, for plaintiff-appellant. Richard S. Florsheim, Foley & Lardner, Milwaukee, WI, argued, for plaintiff-appellant. Of counsel was George E. Quillin.

Donald H. Zarley, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, IA, argued, for defendant/cross-appellant. With him on the brief were Edmund J. Sease and Kirk M. Hartung. Also on the brief was Stephen J. Holtman, Simmons, Perrine, Albright & Ellwood, Cedar Rapids, IA.

Before NIES, Chief Judge, MAYER and LOURIE, Circuit Judges.

NIES, Chief Judge.

Robert L. Mendenhall and CMI Corporation, the exclusive licensee for the United States, as owners of all rights in United States Patents Nos. Re. 31,904 ('904 patent) and 31,905 ('905 patent), sued Cedarapids, Inc., in the United States District Court for the Northern District of Iowa for infringement. Cedarapids counterclaimed, charging CMI with infringement of United States Patents Nos. 4,165,184 ('184 patent) and 4,318,-619 ('619 patent). Cedarapids also sought declaratory judgments of invalidity, unenforceability and noninfringement of Mr. Mendenhall's patents. After a jury trial, judgment was entered in accordance with special verdicts in favor of Cedarapids on the complaint and counterclaims. Cedarapids was awarded damages in the amount of $1,952,-618 plus interest and costs against CMI, and CMI was enjoined from further infringement of the '184 and '619 patents. In Appeal No. 92–1236, Mr. Mendenhall seeks to obtain a new trial by reason of the exclusion of evidence and erroneous jury instructions. In Appeal No. 92–1237, CMI seeks a reversal of the judgment on Cedarapids' counterclaim or a new trial. We find no reversible error raised by these appeals. In Appeal No. 92–1256, Cedarapids seeks to have claims 12 and 13 of the '904 patent declared invalid for obviousness. We agree that Cedarapids is entitled to that judgment.

## I.

### Background

All of the asserted patents relate to the preparation of hot mix asphalt (HMA), a common paving material. Specifically, these

patents disclose the "recycling" of old asphalt paving material, also referred to as reclaimed or recycled asphalt pavement (RAP), by using it in the preparation of HMA.

HMA consists broadly of two components: aggregate and asphalt. "Aggregate," also referred to as ·"virgin aggregate," may consist of rock, gravel, sand, or mixtures thereof. "Asphalt," the highest molecular weight component of crude oil, is the black, sticky substance that gives HMA its characteristic color and odor. As the price of crude oil, and thus of asphalt, increased in the 1970's, the recycling of old asphalt paving material became increasingly attractive.

HMA is prepared in an "asphalt plant," a multi-component assembly, one component of which is an "asphalt mixer." The asphalt mixer is the component that heats and mechanically combines the aggregate, the asphalt, and (in the case of all patents asserted here) the RAP. All of the patents in suit relate to asphalt plants which utilize asphalt mixers known as drum mixers. The use of drum mixers for the preparation of HMA has been known since the 1930's.

Mr. Mendenhall is a paving contractor based in Las Vegas, Nevada. In the mid 1970's, he began experimenting with the preparation of HMA from RAP, using a drum mixer. However, when RAP was introduced into the hot end of the mixer, it burned, emitting a noxious blue smoke. Mr. Mendenhall recognized that this problem could be reduced by introducing the RAP into the cooler, downstream end of the drum.

On August 11, 1975, Mr. Mendenhall filed Application Ser. No. 603,357 (the '357 application), which is grandparent to the applications for both the '904 and the '905 patents. In this application, which issued in December of 1976 as United States Patent No. 3,999,743

(the '743 patent), he disclosed and claimed a process and a drum mixer for making HMA which require the segregation of RAP by particle size, the introduction of larger RAP particles at the hot end, and the introduction of smaller RAP particles in a cooler zone in one or more locations. Extra asphalt may be added.

On August 26, 1976, Mr. Mendenhall filed Application Ser. No. 718,063 (the '063 application) as a continuation-in-part of the '357 application. In this application, which issued in January 1980 as United States Patent No. 4,182,631 (the '631 patent), he disclosed and claimed segregating virgin aggregate (*i.e.,* not recycled) by particle size, introducing larger aggregate particles at the hot end, and smaller aggregate particles in a cooler zone before combining with asphalt. This invention does not involve the use of RAP.

The '905 patent in suit resulted from the following history. On December 27, 1977, Mr. Mendenhall filed Application Ser. No. 864,673 (the '673 application), as a continuation-in-part of the '063 application. In this application, which issued as United States Patent No. 4,177,080 (the '080 patent), he disclosed and claimed the introduction of virgin aggregate in the hot end of the drum mixer, and of RAP into the cooler, downstream end. The claims of the '080 patent are all method claims. The '080 patent was reissued in 1985 as the '905 patent. Representative claim 1 is quoted in the margin, with material added in reissue underlined, and that deleted in reissue bracketed.[1]

On February 16, 1979, Mr. Mendenhall filed Application Ser. No. 12,657, as a division of the '673 application. This application issued as United States Patent No. 4,215,941 ('941 patent) and was reissued as the '904 patent. The claims of the '904 patent are all

---

1. Reissue patent no. 31,905 ('905):

 1. A process for [producing asphalt-aggregate composition] *continuously recycling used asphaltic concrete* comprising

 *continuously* introducing *only* non-asphalt containing aggregate particles in a hot zone of a rotatable drum and gradually heating and advancing said aggregate toward an output drum end,

 *continuously* introducing *only a mixture of coarse and fine* solid particles of used asphaltic con-

crete comprising a mixture of asphalt and aggregate radially into said drum downstream from said hot zone *at a single location* in a cooler temperature zone,

gradually mixing and heating said aggregate with said asphaltic concrete particles, and

adding and mixing liquid asphalt with [said] *the mixture of aggregate and asphaltic concrete* particles downstream from said hot zone to produce [said asphalt-aggregate] *an asphaltic concrete paving* composition.

*apparatus* claims. Representative claim 12, which was not changed during reissue, is set out in the margin.[2]

The drum mixer illustrated in the drawing of the '904 patent is reproduced below. It is a large device, with a typical diameter of 6–10 feet and a typical length of 30–40 feet.

During operation, the cylinder is inclined upward at the left end and rotates about its long axis. A burner (12) heats a gas stream, which in turn heats and dries aggregate, which is introduced at the hot end (left end of drawing). Those parts of the drum more distant from the burner are cooler.

CMI is a manufacturer of highway construction equipment, including drum mixers and other asphalt plant components. CMI has been Mr. Mendenhall's exclusive licensee of all rights in these patents for the United States since February of 1978. All rights in the patents are owned by Mr. Mendenhall and CMI.

The instant case was filed by Mr. Mendenhall and CMI on June 4, 1986 in the Northern District of Iowa. Cedarapids was charged with infringement of all claims of the '905 patent and all but claims 5 and 10 of the '904 patent. Cedarapids denied validity, infringement, and enforceability of the as-

serted claims and sought a declaratory judgment that all claims of the '905 and '904 patents were invalid and/or unenforceable. Cedarapids also counterclaimed for infringement of two of its patents, U.S. Patents Nos. 4,165,184 and 4,318,619 issued to Schlarmann (the '184 and '619 patents, respectively).

Following three weeks of trial and two weeks of deliberation, the jury returned over 350 special verdicts which, in sum, concluded that Cedarapids was not liable to plaintiffs because all claims of both patents were invalid (except Claim 13 of '904) on various and different grounds and no asserted claim of '904 was infringed.[3] Some claims were

2. Reissue patent no. 31,904 ('904):

1. Apparatus for heating and mixing asphalt-aggregate composition comprising
(a) an elongated rotatable drum having an input end and an opposite output end,
(b) means for supplying hot gases of combustion at said input end and for directing said hot gases substantially along the length of said drum between said input and said output ends whereby said composition is gradually heated therebetween,
(c) first means for supplying aggregate particles into said drum at a hot zone whereby said aggregate is directly exposed to said hot gases,

(d) second means for introducing asphaltic concrete particles comprising a mixture of asphalt and aggregate to said drum in a cooler zone whereby said asphaltic concrete is directly exposed to said hot gases in said cooler zone, and
(e) means for recovering heated and mixed composition at said output end.

3. This case was submitted to a jury by agreement of the parties for purported special verdicts under Rule 49 of F.R.C.P. *inter alia* on the issue of validity of the claims of the '904 and '905 patents on numerous grounds. Some of the special verdicts fall within Rule 49 as they are directed to an issue of fact, *e.g.*, Mr. Mendenhall's knowl-

invalidated for more than one reason. For example, the jury found claims 6–10 of '904 and all claims of '905 were invalid by reason of improper reissue. After post-trial motions, the district court entered judgment in accordance with the verdicts that all claims except claims 12 and 13 of the '904 patent were invalid for obviousness; claim 12 was invalid for indefiniteness; and no asserted claim of '904 was infringed; that all claims of the '905 patent were infringed, but all were invalid by reason of a public use bar. The defense of unenforceability by reason of inequitable conduct was rejected. Respecting the counterclaims, the jury found CMI infringed Cedarapids' patents and assessed damages in the amount of $1,952,618 against CMI. Final judgment was entered March 4, 1991, and modified on February 3, 1992 (in an order resolving a number of post-trial motions), to provide for an award of costs and prejudgment interest to Cedarapids.

## II.

### Issues On Appeal

Mr. Mendenhall seeks a new trial of the case but does not otherwise seek to overturn the special verdicts of obviousness of claims 1–11. He challenges only the special verdict of invalidity for indefiniteness of claim 12. Mr. Mendenhall also asserts error in denial of his JNOV motion which sought to overturn the verdicts of noninfringement of '904. Cedarapids seeks a judgment as a matter of law that claims 12 and 13 are also invalid for obviousness.

---

edge of material prior art; others do not, e.g., obviousness of the claimed invention, an issue of law. However, where no objection is made to the submission of a legal issue to the jury, we treat the jury's verdict on the legal issue as a resolution of all genuinely disputed underlying factual issues in favor of the verdict winner. In connection with a motion for judgment as a matter of law, we review the jury's resolution of all such factual disputes for substantial evidence. Our review is *de novo* of any conclusion respecting an issue of law based on the facts which are supported by substantial evidence. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 762–67, 9 USPQ2d 1417, 1421–26 (Fed.Cir.1988), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989); *Structural Rubber Prods. Co. v. Park Rub-*

All claims of the '905 patent, although found to be infringed, were held invalid by reason of the public use bar of section 102(b).[4] Again, Mr. Mendenhall seeks a new trial and does not seek reversal of the judgment entered on these verdicts. Cedarapids seeks reversal of the finding of infringement of the '905 claims.

■ While issues affecting both infringement and validity of the claims are before us, the Supreme Court has directed that we generally rule on validity issues even if we hold that the patents were not infringed. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, —— U.S. ——, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). We turn first therefore to Mr. Mendenhall's new trial arguments on which he must be successful to set aside the judgment of invalidity of claims 1–22 of the '904 patent and all claims of '905 patent.

### III.

### Mr. Mendenhall's Appeal Of Denial Of New Trial

#### A. Inconsistent Verdicts

Mr. Mendenhall contends that inconsistencies in the special verdicts respecting grounds for invalidity returned by the jury mandate a new trial. The trial court considered this objection before discharging the jury, resubmitted certain issues to the jury with additional instructions, and upon return of the verdicts, held that of the remaining alleged inconsistencies, some were not inconsistencies and the remaining two did not warrant a new trial. The court did not find it necessary to rely on all verdicts of the jury

*ber Co.*, 749 F.2d 707, 718–22, 223 USPQ 1264, 1272–75 (Fed.Cir.1984); *Senmed, Inc. v. Richard–Allan Medical Indus., Inc.*, 888 F.2d 815, 818, 12 USPQ2d 1508, 1510–11 (Fed.Cir.1989). The parties agreed that the ultimate issue of obviousness was to be resolved by the trial judge even though a special verdict was sought from the jury on obviousness.

4. 35 U.S.C. § 102(b) prohibits the granting of a patent if:

the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

to enter judgment. Respecting validity, the verdicts accepted by the court were (1) that claims 1–11 of the '904 patent were invalid for obviousness,[5] and (2) that all claims of the '905 patent were invalid by reason of public use. On appeal, the verdicts of obviousness ('904) and public use ('905) are not challenged for lack of substantial evidence in the case as tried. The court did not overturn, but did not rely on, other grounds of invalidity of claims (*e.g.*, improper reissue of claims 6–10 of the '904 patent and all claims of the '905 patent; obviousness of claims 7–18 of the '905 patent). The district court further found that the two minor inconsistencies in the jury's verdicts did not warrant a new trial.

■ One advantage of the use of separate verdicts is that some may be accepted for those issues that are resolved according to the evidence and law and others need not be relied upon or may even be rejected outright. *Quaker City Gear Works, Inc. v. Skil Corp.,* 747 F.2d 1446, 1453, 223 USPQ 1161, 1165 (Fed.Cir.1984) (citing Wright and Miller, Federal Practice and Procedure § 2510, at 520 (1971)), *cert. denied,* 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985). Thus, a new trial may be avoided entirely or be necessary on only certain issues. *Momand v. Universal Film Exchange, Inc.,* 72 F.Supp. 469, 485 (D.Mass.1947), *aff'd,* 172 F.2d 37 (1st Cir.1948), *cert. denied,* 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118 (1949). The trial judge reserves a large measure of control over the judgment to be entered. *Ratigan v. New York Cent. R.R.,* 291 F.2d 548, 555 (2d Cir.), *cert. denied sub nom., New York Cent. R.R. v. Interstate Commodities, Inc.,* 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961). The trial court here accepted the verdicts respecting the obviousness of claims 1–11 of the '904 patent, despite the verdicts that claims 12 and 13 were not obvious, and also entered judgment based on the public use verdicts respecting all claims of '905.

■ Respecting the obviousness verdicts rendered on the claims of the '904 patent, plaintiffs' counsel argued that the verdicts were inconsistent because "[t]here is no dif-

ference from an obviousness viewpoint between Claims 12 and 13 and Claim 1." That a jury may have erred in concluding some claims were obvious and others non-obvious does not necessarily make its verdicts "inconsistent." There were temperature limitations in claims 12 and 13 to which the jury had to have given controlling significance, as Cedarapids' counsel pointed out to the court. Whether the jury was wrong in doing so is an issue in Cedarapids' cross-appeal which will be discussed. However, we agree with the district court that the verdicts on the obviousness/non-obviousness of the '904 claims are not conflicting and inconsistent as a matter of law.

■ Respecting the '905 invalidity holdings, Mr. Mendenhall argues that the verdicts of a public use bar against claims 1–6 are inconsistent with the verdicts that those claims were not obvious because anticipation is the epitome of obviousness. We cannot agree that this legal homily requires setting aside the public use bar verdicts, which the district court reviewed on plaintiffs' JNOV motion and found supported by the evidence of the I–15 project and the Kossuth County project (to be discussed infra). His other assertions related to alleged inconsistencies in verdicts respecting other matters, *i.e.,* abandonment affecting some claims but not others. These verdicts, however, were not relied on by the court. We conclude that the trial court did not commit legal error or abuse its discretion in denying a new trial because of alleged inconsistent verdicts.

## B. *Erroneous Instructions*

■ We review the adequacy of the jury instructions for prejudicial legal error. *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 756 F.2d 1556, 1558, 225 USPQ 253, 255 (Fed.Cir.1985); *Data Line Corp. v. Micro Technologies, Inc.,* 813 F.2d 1196, 1200, 1 USPQ2d 2052, 2054 (Fed.Cir.1987).

(1)

■ Mr. Mendenhall contends that the presumption of validity was "erroneously undercut" by Instruction 14 which stated:

---

5. The verdict that claim 12 was indefinite was accepted but we need not address this issue in

view of our holding *infra* that claims 12 and 13 are invalid for obviousness.

Because the deference to be given the Patent Office's determination is related to the evidence it had before it, you should consider the evidence presented to the Patent Office during the reissue application process, compare it with the evidence you have heard in this case, and then determine what weight to give the Patent Office's determinations.

The presumption of validity was correctly covered by instruction 13, as Mr. Mendenhall admits. Instruction 14, respecting administrative correctness, is consistent with our precedent. *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359–60, 220 USPQ 763, 770–71 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). We find no error.

(2)

Mr. Mendenhall asserts that the trial court improperly denied a requested instruction on the requirements for a written description of an invention for the purpose of receiving the benefits of the filing date of an earlier application.

By way of background, Cedarapids introduced evidence to establish two public uses which occurred during the period from September to early December of 1976. The first of these uses was an asphalt recycle project conducted in Kossuth County, Iowa, by Evards Brothers, Inc. (a paving contractor). In that project, virgin aggregate was introduced into the hot end of a drum mixer, and a screw conveyor (auger) carried RAP from the downstream end to the middle of the drum. William Degan, an Evards Brothers supervisor, testified that 3,000 tons of paving material were made by this process, that over two and a half miles of road were paved, that the pavement was of acceptable quality, that the project was open to the public, and that Evards Brothers was paid for this work.

The second public use was a recycle project conducted in the fall of 1976 by Mr. Mendenhall on a stretch of Interstate 15 in Nevada. Mr. Mendenhall testified that between December 3–9, he put aggregate in the hot end of a drum mixer and RAP in the middle. He further admitted that no attempt was made to restrict access to the site,

and that the project was witnessed by state and federal highway officials. Hank Prouty of the Nevada Highway Commission summarized this work in a contemporary memorandum:

The modified dryer-drum heat exchanger opens the door to a method which has been used on conventional batch plants. This method would require a portion of the complete mix to be produced with new materials and a portion of the old bituminous pavement. The new mineral aggregate would be introduced at the intake end of a normal dryer-drum mixing plant and the old crushed pavement particles and additives would be introduced near the midpoint of the drum.

As indicated, the verdicts of a public use bar respecting the '905 claims are not appealed. Further, Mr. Mendenhall concedes that none of the '905 claims are entitled to the benefit of the filing date of the parent and grandparent applications. There is no dispute that the '905 patent has an effective filing date of December 27, 1977. Thus, the objection to the instructions relates only to the '904 patent.

As previously indicated, the judgment of invalidity of the '904 claims is based on obviousness of the claims, not on a public use bar. Thus, the attack on the instruction as it affects the '904 patent is somewhat convoluted. The date of actual filing of the application of the '904 patent is the date of the '673 application which resulted in the '905 patent (the application leading to the '904 patent was a divisional application from the '673 application).

Mr. Mendenhall argued he was entitled to August 11, 1975, as the filing date for the '904 patent, which is the earliest date in the previously discussed chain of applications going back to the '357 grandparent application filed on that date. Mr. Mendenhall argues that this early date would eliminate the above described public uses as prior art which may have been considered in determining obviousness of claims 1–11 of the '904 patent. Cedarapids argues that the jury's verdicts on obviousness are well supported by pre–1975 prior art, even if Mr. Mendenhall had the benefit of the earlier date.

While Mr. Mendenhall argues on appeal his entitlement to the early date as a matter of law, that is not an issue before us. His appeal is based on his objection to the instructions on this issue on the ground of prejudicial legal error. If such error occurred, he would be entitled to a new trial.

■ We cannot agree with Mr. Mendenhall that the instructions were erroneous. Instruction 15 told the jury the legal requirements for obtaining the benefit of an earlier filed application. Mr. Mendenhall does not challenge this instruction as legally erroneous, nor could he do so. The instruction accurately stated section 120's three requirements (disclosure, copendency and reference) for an application to be afforded the benefit of an earlier filing date, as well as the section 112, first paragraph, disclosure requirements. Thus, Mr. Mendenhall asserts an error of omission, not of misstatement of the law. Specifically, he challenges the court's refusal to give the jury his proposed "Instruction no. 24:"

WRITTEN DESCRIPTION—INHERENT CAPABILITIES

The requirement of a written description, as applied to a piece of equipment, requires a written description of the structure of the claimed equipment, and not its capabilities. While a description of a capability may be included, it is not necessary to satisfy the written description requirement as to the claimed equipment. If a patent applicant claims an effective filing date through a series or chain of patent applications, different applications in the chain can refer to different capabilities of the claimed equipment.

Mr. Mendenhall's proposed instruction respecting "inherent capabilities" may be appropriate in some circumstances. *See, e.g., Kennecott Corp. v. Kyocera Int'l, Inc.,* 835 F.2d 1419, 5 USPQ2d 1194 (Fed.Cir.1987) (inclusion of inherent microstructure as descriptive term in claims does not cause claim to lose benefit of parent application's filing date), *cert. denied,* 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 198 (1988); *In re Kirchner,* 305 F.2d 897, 134 USPQ 324 (CCPA

1962) (inherent chemical *property* sufficient for utility to support later claim to chemical compound where no claim was made to compound's use). However, the invention in this case is not claimed as specific structure of a machine which may have inherent properties. The invention is claimed as unspecified structure for performing specific functions. Those functions are not disclosed in the grandparent application. This is clearly brought out in the record.

After testimony respecting the functional limitations of the claims, Mr. Mendenhall's expert admitted that the claims of the '904 patent could not have been made in the parent or grandparent applications. The combination of specified functions required for elements described only as "means" are not described therein. In addition, Mr. Mendenhall himself testified that he did not have any invention directed to introducing virgin aggregate and RAP as specified in the '904 claims until December 1977, and there is no description of that invention in the parent or grandparent applications. As stated in *In re Kaslow,* 707 F.2d 1366, 1375, 217 USPQ 1089, 1096 (Fed.Cir.1983), the disclosure of an antecedent application must convey "that the inventor had possession at that time of the later claimed subject matter." Mr. Mendenhall could not convey that he possessed an invention in the 1975 application if he did not even conceive the invention until 1977.[6] Moreover, in arguing for allowance of foreign counterparts, Mr. Mendenhall told the British and Australian patent offices specifically that the parent and grandparent disclosures do not teach this invention. Mr. Mendenhall's position was critical to allowance of the foreign claims because the U.S. '743 and '631 patents on which disclosures he now seeks to rely were prior art to his foreign applications. Mr. Mendenhall would have us read out the functional limitations of the claims on a theory of inherency. We decline to do so. The functions of the structural means, *e.g.,* of introducing a mixture of asphalt and aggregate, are not disclosed simply by disclosures of a scoop and entry port. Further, these

---

6. This testimony is difficult to square with the testimony respecting his 1976 work on Interstate

15, discussed *supra.* However, the discrepancy has no effect on the statutory bar.

functions were admittedly necessary to both patentability and infringement.

■ Under these circumstances, Mr. Mendenhall has no right to a new trial respecting obviousness of the '904 invention because of prejudicial legal error in the instructions. A patentee cannot obtain the benefit of the filing date of an earlier application where the claims in issue could not have been made in the earlier application. Mr. Mendenhall's further argument that somehow the early date would affect the finding of infringement is no more than a conclusory statement and is wholly inadequate as a ground for retrial of noninfringement. In sum, the district court did not err or abuse its discretion in rejecting Mr. Mendenhall's proposed Instruction 24.

## C. *Evidentiary Rulings*

Mr. Mendenhall urges he is entitled to an entirely new trial because the trial judge erred as a matter of law in excluding from evidence the official records of other litigation involving the patents in suit.

Mr. Mendenhall and CMI have prosecuted several lawsuits, in various district courts, against several alleged infringers of the '904 and '905 patents. Two other appeals were argued at the same time as this appeal. *Mendenhall v. Astec Indus.*, Appeal Nos. 91–1317 and 92–1244 (appeal from the final judgment of the United States District Court for the Eastern District of Tennessee) and *Mendenhall v. Barber–Greene*, Appeal Nos. 91–1109, –1131 (appeal from the final judgment of the United States District Court for the Northern District of Illinois).[7]

The *Astec* case was a bifurcated proceeding, with the issue of liability being tried to the bench in the fall of 1988. On October 31, 1988, Judge Hull, in a lengthy opinion, sustained the validity and enforceability of the '904 and '905 patents and found these patents infringed by Astec.[8] *Mendenhall v. Astec Indus., Inc.*, 13 USPQ2d 1913, 1988 WL 188449 (E.D.Tenn.1988). Astec filed an interlocutory appeal of this liability judgment. The liability judgment was affirmed by this court on September 1, 1989, in a nonprecedential decision.[9] On remand, damages were assessed. Astec's appeal of the final judgment is pending.

Meanwhile, the suit against Barber–Greene had been stayed, pending the outcome of Astec's appeal on the liability issues. After some proceedings that need not be reviewed here, Barber–Greene, which in the interim was acquired by Astec, proceeded to try the issue of whether its machines infringed the '904 patent. Validity was not tried. The only issue tried respecting the '905 patent was the amount of damages.[10] These issues were resolved in a jury trial in the spring of 1990. The jury found claim 1 of the '904 patent infringed. A final judgment was entered on May 23, 1990, holding Barber–Greene liable on both patents. That judgment is the subject of Barber–Greene's copending appeal.

Prior to trial, Cedarapids filed a motion *in limine* to exclude evidence respecting the other litigation involving the patents in suit. Cedarapids, anticipating that Mr. Mendenhall might proffer such evidence as relevant to the willfulness of Cedarapids' alleged infringement and as secondary indicia of nonobviousness, argued that the evidence would be prejudicial on other issues as to which it was not relevant. The district judge, Judge Hansen, granted Cedarapids' motion preliminarily, with the proviso that, if plaintiffs reached a point at trial where they needed to refer to other litigation, counsel was to make

7. Separate opinions will be issued in these appeals.

8. The court also found several Astec patents, asserted by counterclaim, infringed by CMI.

9. The text of this court's opinion, which was designated "Not citable as precedent" pursuant to our rules, appears at 13 USPQ2d 1956 with this legend.

10. The claims of the '905 patent were all narrowed in reissue; the asserted claims (1–4) of the '904 patent were unchanged. Under 35 U.S.C. § 252, CMI and Mendenhall could recover damages for pre-reissue infringement only under the '904 patent. Thus trial of the issue of infringement of the '904 patent was not superfluous even though liability on the '905 patent count was stipulated.

a proffer and argue the matter at side-bar.[11] In ruling on the plaintiff's first request to do so, Judge Hansen clarified that his *in limine* ruling did not preclude all reference to the previous litigation, the fact of which was disclosed, in any event, in the prosecution files of '904 and '905 patents which were of record [A160–161].

Throughout the trial there were references to the other litigation. For example, when defendant's counsel implied that the *Barber–Greene* suit showed that plaintiffs were litigious, plaintiffs were allowed to inform the jury that Mr. Mendenhall prevailed in that suit. In this connection, the following colloquy took place between Mr. Dunlap, plaintiffs' counsel, and Judge Hansen:

THE COURT: I intend to instruct the jury that any prior results of patent litigation are of little significance here because whether or not the patents are infringed depends upon the peculiar facts of this case.

MR. DUNLAP: *That is I think true with respect to infringement.* The other big issues are those facts they must find with respect to validity issues. I think we have a difference.

THE COURT: Please correct me if I'm wrong, because I'll be frank to tell you, I'm in an area where I don't claim any expertise, but validity is a question for me based upon fact findings by the jury?

MR. DUNLAP: *Well, the ultimate validity decision is yours.* There are underlying factual issues that the jury can determine, like anticipation, it was known in the prior art, shown, or courts have given the issue of obviousness to the jury because it has a lot of underlying factual issues. Some courts have said that's more of an advisory position, [sic, opinion] but at least

it is submitted to the jury as a matter of course frequently.

THE COURT: *I want to be sure in this trial we zero in on the facts involved in this dispute between the parties and that we don't re-litigate prior litigation.* That's what I want to avoid, and so that's why I'm contemplating the kind of instruction that I've just announced to you I'm thinking about giving.

MR. DUNLAP: *And I understand the Court's position with respect to the issue of infringement, on the issue of obviousness, for example, this is going to come up again with expert witnesses,* and this is something we mentioned in chambers the other day, that this issue is going to come up, I think.

THE COURT: And I'll cross those bridges as I come to them, Mr. Dunlap.

(Emphasis added.) After plaintiffs' witness testified that CMI and Mr. Mendenhall prevailed in the *Barber–Greene* lawsuit, Judge Hansen gave the cautionary instruction that the fact that the plaintiffs "had prevailed in prior litigation does not entitle them to recover in this litigation."

At another point, Mr. Mendenhall's witness was allowed to testify that the issue of Mr. Mendenhall's alleged inequitable conduct was tried in the *Astec* litigation, that Mr. Mendenhall had prevailed on that issue, and that the Federal Circuit, on appeal, affirmed that decision.

At various times Mr. Mendenhall proffered composite Exhibit 307, consisting of the order and judgment in *Astec* together with the 130 page opinion of Judge Hull; Exhibit 308, the nonprecedential opinion of this court affirming Astec's liability; the entire *Astec* evidentiary record; and various documents from the *Barber–Greene* case, *e.g.*, jury ver-

11. Judge Hansen explained his preliminary decision to exclude the district court opinion:

Well, we strive mightily in every trial, every jury trial, not to let the jury know how the judge feels about [the case]—we put up all sorts of barriers, insulation between the judge and the jury, because everything I've ever read about it indicates that the jury is always looking for some indication as to how the judge feels about the case, and I agree with the Defendant's position here that permitting this

jury to have my brother judge's 140–page opinion involving many of the same type claims as are advanced here would be to short-circuit the fact-finding mission of this jury. I'm greatly concerned that they would say, "Look, a federal judge has looked at these similar claims and has said so-and-so, and we'll just go along with that decision," and I think it's an invitation for the jury to abdicate their responsibilities, . . .

dict, judgment and post trial motions orders. Mr. Mendenhall argued that the jury should have taken into account the factual findings and legal conclusions set out in Judge Hull's lengthy opinion on the issues of the filing date of the '904 patent, the date of invention for the '905 patent, anticipation, obviousness, abandonment, non-inventorship, prior art, and various equitable defenses which were litigated in both *Astec* and this case, as well as on the issue of infringement because of Judge Hull's finding of infringement by Astec of the '904 and '905 patents. He also argued that Judge Hull's opinion was needed to cross-examine Cedarapids' expert witness because Judge Hull and the witness reached different conclusions on the issues of validity and infringement and the district court's opinion should be treated like testimony of a legal expert.

Judge Hansen refused to admit the proffered exhibits into evidence, stating:

Counsel, I begin my analysis of the problem by determining whether or not the evidence is relevant. In my judgment it is relevant on the willfulness issue. I'm not convinced that it is as relevant on the validity issue, principally because my reading of the cases tells me that validity is tested in each separate proceeding under the proofs then presented. So having found the proffered evidence relevant, the question becomes whether or not under Rule 403's balancing it ought to be excluded as unfairly prejudicial? The rule says this:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

The notes of the Advisory Committee show that unfair prejudice as used in the rule means *an undue tendency to suggest decision* on an improper basis, commonly, though not necessarily, an emotional one. Here the improper basis and the undue

tendency to suggest a decision on that basis is the prior decision by the federal district court in Tennessee and affirmance of that decision by the federal circuit, and the jury's tendency to follow those decisions on the validity and infringement issues. The notes are further instructive, "In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction ... the availability of other means of proof may also be an appropriate factor."

Well, for the last hour I've been trying to determine in my mind how I could balance this out, permit the evidence to come in in some form, some other means of proof, and yet not have it so—as prejudicial as I see it in its present form, and I've been unable to construct any sort of scenario for examination of the witness [Cedarapids' expert] that I think would obviate the defense necessity to explore in depth the defenses presented in the Astec and Barber–Greene cases, and the like. And so my decision is that I'm going to continue with my ruling in limine and I'm going to preclude the introduction of the evidence as contained in the proffer at this juncture in the trial.

My judgment is that although relevant ..., the evidence has a very high risk of unfair prejudice....

■ In sum, Judge Hansen based his exclusion of the proffered materials relating to prior proceedings even though portions were relevant evidence to some factual issues, on Federal Rule of Evidence 403. He carefully weighed the probative value of the proffered evidence, to the extent relevant, against the danger of unfair prejudice to the defendant and decided, in his discretion, to keep the proffered materials from the jury primarily because of possible judicial influence on the verdicts.

Rule 403 provides an exception to the admissibility of relevant evidence.[12] We review

12. Fed.R.Evid. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consid-

the court's decision to exclude evidence under Rule 403 under an abuse of discretion standard. *Block v. R.H. Macy & Co.*, 712 F.2d 1241, 1245 (8th Cir.1983). An abuse of discretion is shown where the district court either made a clear error of judgment, or exercised its discretion on findings which were clearly erroneous or on an error of law. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039, 22 USPQ2d 1321, 1333 (Fed.Cir.1992) (in banc).

On appeal, Mr. Mendenhall argues for admissibility of the exhibits relating to the *Astec* proceedings. He no longer pursues the *Barber–Greene* materials. The main focus of his arguments is on exclusion of Judge Hull's opinion and ours will be as well. Relevant to our standard of review, he does not argue that the district court based its ruling upon findings which were clearly erroneous or made a clear error in judgment. Mr. Mendenhall's sole basis for asserting an abuse of discretion is that the district court committed an error of law. Per Mr. Mendenhall, the district court was *required* to admit Judge Hull's opinion, if not all other related documents, and that Rule 403 does not apply to this type of evidence because of overriding precedent of this court.

As an initial matter, we note that the factual findings and legal conclusions in *Astec* cannot be used as a collateral estoppel against defendants who were not parties to that case. "Due process prohibits estopping them [the new defendants] despite one or more existing adjudications of the identical issue which stand squarely against their position." *Blonder–Tongue Lab., Inc. v. University of Ill. Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). However, Mr. Mendenhall asserts not that the prior court's opinion rises to the level of an estoppel, but that the findings and conclusions contained therein must be introduced as evidence for the jury's consideration.

*1. Prior Decision is Legal Precedent*

■ Mr. Mendenhall argues first that Judge Hull's opinion must be admitted as evidence in a second trial under our case law holding that a prior adjudication that a patent is "valid" is entitled to "weight", citing *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 723, 16 USPQ2d 1923, 1926 (Fed. Cir.1990), and *Stevenson v. Sears, Roebuck & Co.* 713 F.2d 705, 711, 218 USPQ 969 (Fed. Cir.1983) (hereinafter "*Stevenson*"). To be given "weight," per Mr. Mendenhall, the prior decision must be in evidence for the jury to consider.

■ Mr. Mendenhall's argument confuses distinct concepts. A prior opinion of a court that has ruled on validity may be given "weight" without also giving the opinion evidentiary effect on disputed underlying facts which the jury must resolve. The above-cited precedent deals with use of a prior opinion respecting validity as a legal precedent, not as substantive evidence of disputed facts.[13] Mr. Mendenhall simply misinterprets the language in *Stevenson* and *Gillette*, and similar language by other courts respecting giving "weight" to a prior opinion on the issue of "validity." Routinely, the term "weight" is used in connection with citation of legal precedent. *See, e.g., Stevenson v. Grentec, Inc.*, 652 F.2d 20, 22–23, 211 USPQ 1020, 1022 (9th Cir.) ("decisions of [CCPA] should be given weight and treated with respect"), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2008, 72 L.Ed.2d 465 (1982). This is the import of the further explanation in *Stevenson* that a prior decision respecting validity "serves only as a 'red flag warning.'" 713 F.2d at 711, 218 USPQ at 975. A prior decision that a patent has previously survived an attack on its validity serves only to inform the district court, and this court as well, that caution must be taken in reaching a contrary legal conclusion.

Further, for use as legal precedent, a prior decision need not be admitted into evidence

---

erations of undue delay, waste of time, or needless presentation of cumulative evidence.

**13.** As will be discussed, evidence of prior litigation, to the extent relevant, may also be used in appropriate circumstances as substantive evidence to establish a fact in a later case, but then it becomes subject to Rule 403, like all other relevant evidence, and may be excluded if its probative value is substantially outweighed by possible prejudice to one's opponent, due *inter alia* to the possibility of jury confusion.

**1570**

but will be given "weight" merely by its citation in a brief to the second court. A copy may, of course, be given as an exhibit for the court to consider, but placing an opinion in evidence for this purpose gives it no better status than mere citation. As explained by the Supreme Court long ago in *MacKay v. Easton,* 86 U.S. (19 Wall.) 619, 632, 22 L.Ed. 211 (1873):

> The reports of [decisions] may be referred to as expositions of law upon the facts there disclosed, but they are not evidence of those facts in other cases.

Mr. Mendenhall's reliance, as well as reliance by the dissent, on *Stevenson* and *Gillette* is thus misplaced. Our mandate to give "weight" to a prior decision respecting validity does not mandate that it be admitted as substantive evidence of the facts therein for a jury or even a judge in a later case to consider in resolving the same factual issues underlying the patentee's right to prevail in a second trial. The directive invokes only the familiar principle that deference should be given by one court to prior decisions of other tribunals on the same legal issue. It is a "red flag warning" to the judge.[14] Deferential weight on a legal conclusion, not evidentiary weight on facts in dispute, must be given to the prior decision.

## 2. *Stare Decisis*

Mr. Mendenhall's next argument is that the decision of this court in the *Astec* case must control this case unless substantially different evidence was presented here. This is based on a footnote in *Stevenson* which suggests that a prior decision by this court may rise to the level of *stare decisis. Stevenson,* 713 F.2d at 711 n. 5, 218 USPQ at 974 n. 5.

■ *Stare decisis* in essence "makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision.... It deals only with law, as the facts of each successive case must be determined by the evidence adduced at trial...." 1B James W. Moore, Moore's Federal Prac-

tice, ¶ G401 (2d ed. 1993) *Stare decisis* may also encompass a prior precedential decision on an issue of law which also is raised in a second case. *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1573, 223 USPQ 465, 470 (Fed.Cir.1984). Thus, *stare decisis* could be invoked by a district court or by this court based on a prior decision of this court, but the opinion of one district court is entitled only to comity in another district court.

■ This court has rejected *stare decisis* as generally inappropriate on the issue of validity of a patent, *Stevenson,* 713 F.2d at 711, 218 USPQ at 974, but Mr. Mendenhall is correct that we have not precluded invoking *stare decisis* where appropriate. Noting that this court has not addressed trial procedures in this connection, Mr. Mendenhall urges this court to adopt a procedure he derives from the Seventh Circuit's decisions in *American Photocopy Equipment Co. v. Rovico, Inc.,* 384 F.2d 813, 155 USPQ 119 (7th Cir.1967), *cert. denied,* 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1133 (1968) (hereinafter *"Rovico"*), and *Mercantile National Bank v. Howmet Corp.,* 524 F.2d 1031, 188 USPQ 353 (7th Cir.1975), *cert. denied,* 424 U.S. 957, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976) (hereinafter *"Howmet"*), where a second attack on a patent was unsuccessful after it had previously been upheld by the circuit court in an earlier case.

■ Mr. Mendenhall concludes from these cases that the issue in a second patent infringement trial should be fundamentally different after this court affirms a judgment that the claims were not proved invalid in a prior case. Mr. Mendenhall would have the entire record in the prior case admitted, and the jury in this second case would decide whether the *evidence* in the two cases was or was not substantially different.

We cannot agree. At least two basic flaws are readily apparent in Mr. Mendenhall's proposal. First, *stare decisis* applies only if the underlying *factual findings* in the two cases are the same, not merely the *evidence.*

14. Respecting the issue of obviousness of '904 claims, the parties agreed that was an issue for the judge to resolve.

And second, whether *stare decisis* applies is a legal matter for the *judge* to decide, not the *jury*.

Mr. Mendenhall's proposal erroneously equates "evidence" with "facts" and omits the critical step of fact finding. Only where the evidence is undisputed would Mr. Mendenhall's procedure be legally tolerable but, in that event, there would be no role for the factfinder in the second case.

In this appeal, we uphold a judgment entered on a jury verdict. It is significant that the *Astec* trial and this trial were before entirely different factfinders. Those factfinders, the *Astec* judge and the jury here, were free to make different assessments respecting the credibility of witnesses on factual disputes. Particularly where a jury is involved, it is difficult to determine which witnesses were believed and which were not. Further, as an appellate court, this court must review the underlying factual findings under a different standard in a bench trial and in a jury trial. Thus, different judgments can be reached and must be affirmed even on essentially the same *evidentiary* record. That is a vagary of our justice system. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous ... even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts."); *Digital Equip. Corp. v. United States*, 889 F.2d 267, 269 (Fed.Cir.1989) (same). As a matter of due process, each new defendant in a patent suit is entitled to make its own defense. There can be no collateral estoppel against a defendant who has not had "a full and fair opportunity to litigate the claim" at issue. *Blonder–Tongue*, 402 U.S. at 329, 91 S.Ct. at 1443. Cedarapids' full and fair opportunity to litigate in this case included its 7th Amendment right to determination of factual issues by a jury, not by either Judge Hull in the prior case or even by Judge Hansen in this case.

Further, the testimony in the prior case, which Mr. Mendenhall sought to admit by offering the *entire* record of the first trial, is hearsay and not admissible except under limited circumstances not pertinent here. The defendants cannot be deprived of their right to cross-examination of witnesses. Yet to make Mr. Mendenhall's theory of a "comparison of evidence" trial work, the jury would have had to consider the testimony in the prior case without having an opportunity to assess the credibility of the witnesses.

Thus, for Seventh Amendment and due process reasons, we reject Mr. Mendenhall's proposal that the determinative issue in the second trial should be whether the *evidence* was different. Judge Hansen was correct that the second trial before him had to be conducted and judged as an independent proceeding with factual issues decided by the jury on the evidence in this case, not supplemented by the evidence in the prior case. In rejecting an argument similar to Mr. Mendenhall's, this court has previously stated:

> The presumption of validity is a clear statutory procedural device. It is not augmented by an earlier adjudication of patent "validity." A patent is not held valid for all purposes but, rather, not invalid on the record before the court.

*Shelcore Inc. v. Durham Indus., Inc.*, 745 F.2d 621, 627, 223 USPQ 584, 588 (Fed.Cir. 1984); *See also Stevenson*, 713 F.2d at 711, 218 USPQ at 974. Only after the factual issues are resolved appropriately in the second case can *stare decisis* on the ultimate legal conclusion respecting "validity" be invoked where the same controlling facts are found in each case.

The second flaw is that *stare decisis* is, like the invocation of legal precedent, a matter for the court to consider, not the jury. However, Mr. Mendenhall did not ask the trial judge, and does not ask this panel, to apply *stare decisis* principles. He invokes *stare decisis* as the basis for controlling the jury's factfinding. Approval of that procedure (whether the second factfinder is a judge or a jury) would be a perversion of *stare decisis*. No precedent eliminates the need for independent factfinding in the second trial before *stare decisis* applies.

*Rovico* and *Howmet,* on which Mr. Mendenhall relies, are not to the contrary on either point. First, neither involved a jury trial. Second, the trial court in both cases performed its role as factfinder before invoking *stare decisis.* In *Rovico,* while additional references relating to obviousness were presented as evidence, the trial court was unpersuaded to reach a conclusion respecting nonobviousness of the invention different from that reached by the Seventh Circuit in *Copease Mfg. Co. v. American Photocopy Equipment Co.,* 298 F.2d 772, 132 USPQ 87 (7th Cir.1961). Nothing in either the trial court or appellate court opinions indicates that the facts underlying the first decision were disputed or, if they had been, that the second judge should not independently make findings on the evidence in the case before him relating thereto. The issue in *Rovico* was simply the effect of the evidence respecting additional references on the legal conclusion of nonobviousness.

The Seventh Circuit stated:

We conclude on the validity point that Rovico has not shown that the district court's findings of fact are clearly erroneous, or that its conclusions from the findings are erroneous. The court did not err in ruling that there was not persuasive evidence to remove this issue from this court's holding of validity in Copease.

384 F.2d at 817, 155 USPQ at 121. The Seventh Circuit in *Rovico* holds only that the district judge did not err in applying *stare decisis* based upon the factual findings and legal conclusions he made in that case.

In *Howmet,* the Seventh Circuit specifically noted that there was no material distinction as to the *facts* as found by the district court and those affirmed in an earlier appeal on the patent at issue. 524 F.2d at 1034, 188 USPQ at 355. Thus, neither case supports Mr. Mendenhall's argument that the issue in the second trial is whether the *evidence,* as opposed to *factfindings,* is different.

Similarly, in *Radio Corp. of America v. Radio Engineering Laboratory, Inc.,* 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163 (1934), the Supreme Court for the second time upheld lower court rulings against an inventor's claim of priority of inventorship. Indeed, the

second trial was essentially a sham because, in an effort to avoid the application of *res judicata,* the disgruntled inventor whose loss of priority had been affirmed in suits brought by himself and by his assignee, was paying the expenses of the new plaintiff. In any event, the Court did not endorse a rule that an unrelated defendant is bound by factual findings in a prior suit absent different *evidence.*

■ Mr. Mendenhall invokes *stare decisis* in this case respecting Judge Hull's ruling that the '904 patent was entitled to the filing date of the grandparent application which this court affirmed. This second panel would be expected to follow the prior ruling if the factual findings underlying the legal determination were the same. They are not. As previously discussed, the verdicts and the different evidence and arguments in this case, particularly plaintiff's admission here, but not in the *Astec* proceedings, that the '904 claims could not have been made in the grandparent application, now lead inexorably to the opposite legal conclusion, namely, that the grandparent disclosure does not comply with the section 112 requirements respecting the invention of the '904 patent. Under these circumstances, this court is not bound by its prior ruling on this issue.

## 3. *Rule 403*

■ The previous discussion disposes of Mr. Mendenhall's arguments that the trial court, as a matter of law, had to admit Judge Hull's opinion, under the precedent of *Stevenson, Gillette, Radio Corp.,* or other *stare decisis* decisions. We therefore turn to whether this evidence could be excluded under Rule 403.

As support for his position that Judge Hull's opinion and other documents could not be excluded from the jury under Rule 403, Mr. Mendenhall relies on *Farmhand, Inc. v. Anel Engineering Industries, Inc.,* 693 F.2d 1140, 217 USPQ 139 (5th Cir.1982). In *Farmhand,* the Fifth Circuit ruled that the presumption of validity of a patent was "supported by prior adjudications and consent decrees testing and affirming its validity." 693 F.2d at 1143–44, 217 USPQ at 143.

Thus, the court concluded it was not error to consider "evidence" of prior litigation in a subsequent bench or jury trial. However, *Farmhand* does not tell us what the "evidence" was that was admitted. No reference is made to a prior opinion of a trial judge and the judgments alone would have been sufficient for the purpose of "enhancing" the presumption. *Farmhand* does not mandate submission of another judge's opinion to the jury. Moreover, our precedent rejects the Fifth Circuit view that evidence can strengthen the presumption of validity. As stated in *Shelcore, Inc. v. Durham Industries, Inc., supra,* the presumption does not decrease or increase. It is a procedural device.

▪ Turning to Rule 403, we agree that it may be appropriate to admit evidence of prior litigation, but such evidence must pass muster, like any other evidence, as relevant and probative of an issue in the second case. *See Greycas, Inc. v. Proud,* 826 F.2d 1560 (7th Cir.1987) ("[S]tate court judgment was put in merely as evidence of status of Greycas liens; and it was admissible for this purpose."), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). There is no exemption from these requirements for evidence of prior litigation. Further, if relevant, the proffered evidence may, nevertheless, be excluded under Rule 403 if its probative value is substantially outweighed by its prejudice to one's adversary or because of the likelihood of confusion of the jury. *Johnson v. Colt Indus. Operating Corp.,* 797 F.2d 1530, 1934 (10th Cir.1986) (jury might assume that the opinion is entitled to as much weight as the trial court's instructions since both emanate from courts); *United States v. Perry,* 857 F.2d 1346, 1351 (9th Cir.1988). There is no exemption from Rule 403 for evidence of prior litigation. None of the proffered evidence is *per se* admissible or excludable. We must look at particular issues and at the particular evidence proffered and the reasons for exclusion. The questions are more refined than Mr. Mendenhall's (or the dissent's) broad brush approach.

As indicated, Judge Hansen did not exclude all evidence relating to prior litigation. For example, when questioning by Cedara-

pids' counsel left the impression that the *Barber–Greene* suit showed that Mr. Mendenhall was prone to litigation, Mr. Mendenhall rightly protested that evaluation of his conduct. Judge Hansen was eminently fair in allowing Mr. Mendenhall's witness to tell the jury that Mr. Mendenhall, in fact, prevailed against Barber–Greene in that litigation. That the *Barber–Greene* trial ended with a judgment for Mr. Mendenhall was not disputed and that result countered defendants' aspersions on the plaintiff's character. The official record of the judgment, although clearly probative of the result in the case, would have been merely cumulative and was not offered at that time in any event. At the other extreme, respecting the issue of infringement, none of the prior litigation evidence was factual evidence respecting Cedarapids' machine and method. Mr. Mendenhall, indeed, conceded at trial that the prior litigation was not relevant evidence of infringement although he now must assert the contrary to us to secure a new trial on infringement.

Respecting *Astec,* Mr. Mendenhall seeks admission of not merely the judgments in *Astec* (these were never separately offered) but also, and most particularly, the opinion of Judge Hull, all part of a single proffered Exhibit 307. Mr. Mendenhall's emphasis on getting Judge Hull's opinion into evidence is not surprising inasmuch as the *Astec* and *Barber–Greene* judgments simply state that the respective defendants are held liable to the plaintiffs. This evidence alone would not accomplish Mr. Mendenhall's purpose which is to use the legal conclusions of Judge Hull and his factual findings underlying the *Astec* judgment to help prove its case on the law and the facts against Cedarapids.

Judge Hansen concluded that *part* of the proffered evidence was marginally relevant to the issue of obviousness. This is likely true. Prior litigation may be evidence of the "secondary" considerations of commercial success or copying. Defendants' knowledge of the prior litigation would also be relevant to the allegation of willful infringement. But the form of the evidence is also important.

Judge Hull's *opinion* was not needed in this case for any legitimate purpose.[15]

■ Mr. Mendenhall asserts particularly that Judge Hull's ruling that the '904 patent was entitled to the filing date of the grandparent application is evidence of that legal conclusion and could have affected the verdict of obviousness. For reasons previously given, we disagree. Judge Hull's opinion, even with our affirmance, does not constitute substantive evidence of any facts underlying that issue. As has been explained, his prior ruling and our affirmance is entitled to legal deference on that issue, but only that. *Stevenson*, 713 F.2d at 711, 218 USPQ at 975. Thus, the jury was not deprived of relevant evidence on the issue of the filing date or obviousness of the '904 patent.[16]

■ Mr. Mendenhall also argues that the exclusion of Judge Hull's opinion prejudiced his cross-examination of Cedarapids' expert in that the latter's opinions respecting validity and infringement were at variance with Judge Hull's. The dissent finds the opinion highly relevant evidence to buttress Mr. Mendenhall's own expert's testimony and discredit that of Cedarapids. In effect, Mr. Mendenhall wanted to use Judge Hull as his expert witness. Not only could Judge Hull not be cross-examined, but his status as a judge puts him on a par with Judge Hansen, not with an expert witness. Moreover, Judge Hansen—not the experts, or even another trial judge—was the arbiter on the law and on the legal conclusion of obviousness in his courtroom. As stated in *Nutrition 21 v. United States*, 930 F.2d 867, 871 n. 2, 18 USPQ2d 1347, 1350–51 n. 2 (Fed.Cir.1991), "An expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all." *See also Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1564, 7 USPQ2d 1548, 1554 (Fed.Cir.1988).[17]

Respecting the factual issues, the jury should no more be guided to its factual determinations by Judge Hull than by Judge Hansen. Such improper influence is not tolerated, as Judge Hansen stated. Mr. Mendenhall sought to have done by Judge Hull what Judge Hansen could not legally do—influence the jury's fact finding mission. *See Quercia v. United States*, 289 U.S. 466, 471–72, 53 S.Ct. 698, 699–700, 77 L.Ed. 1321 (1933) (judge's assertion of fact precluded jury's fair and dispassionate consideration of the evidence); *Travelers Ins. Co. v. Ryan*, 416 F.2d 362, 364 (5th Cir.1969) (judge's fair and unbiased comment on evidentiary manners is permissible, but judge's comment upon the ultimate factual issue to be decided by the jury is not permitted).

Also, in ruling on Mr. Mendenhall's JNOV motion respecting obviousness, we note that Judge Hansen omitted the testimony of the expert from the delineation of evidence which he found supported the jury verdicts respecting the obviousness of the '904 claims. Thus, the judgment before us, in any event, does not rest on the testimony of Cedarapid's expert.

Judge Hansen balanced the relevance of some of the evidence respecting prior litigation as to some issues against the very high risk that the jury would be confused and improperly influenced by Judge Hull's opinion on all issues. Judge Hansen was well aware of the possibility of a limiting instruction. But, respecting Judge Hull's opinion, such instruction would have had to include a fuller instruction than the cautionary instruction he had given earlier in the trial. He would have had to give an unseemly explanation to the jury of his disagreements with Judge Hull on the law. The affirmance by this court of the *Astec* judgment did not

---

15. Mr. Mendenhall argues that he could have discredited Cedarapids' legal expert who admitted that in making his legal analysis he did not read Judge Hull's opinion. However, contrary to the dissent, Judge Hull's *opinion itself* was not necessary for that purpose.

16. Indeed, Mr. Mendenhall does not delineate any underlying factual issue in dispute on this legal issue. He argues the matter only as a question of law.

17. Indeed, the spectacle of experts arguing over the legal conclusions of obviousness before the jury, even if not error, should be avoided inasmuch as such opinions are not substantive evidence. The practice of using such experts developed in bench trials where they informed the judge, like a brief, on the intricacies of patent law.

validate Judge Hull's *legal opinion* on all issues or mean his opinion was free of error.[18] This court simply found no *reversible* error on the basis of the particular issues raised in the *Astec* appeal.

 Finally, Mr. Mendenhall took an all or nothing approach. He did not offer the *Astec* judgment apart from the opinion. And he continues to assert error in exclusion of Judge Hull's entire opinion as evidence of the law and the facts. Thus, we need not decide if the judgment should have been admitted. That question was not presented to Judge Hansen.

The dissent would hold that Judge Hull's opinion is relevant evidence for resolving the questions of fact and law in this case, indeed "the most probative available." However, the authority cited as support, *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951) and *Twentieth Century Fox Film Corp. v. Brookside Theatre Corp.*, 194 F.2d 846 (8th Cir.1952), hold only that a prior judgment may be used in a second suit against the party who lost the first suit.

The *Emich* defendant had been convicted in a criminal proceeding for violation of the antitrust laws. In a later private suit for damages against the same defendant, the prior conviction was allowed as evidence, as specifically provided in section 5 of the Clayton Act, to establish *prima facie* the facts of the same antitrust violation against that defendant. The Supreme Court held that this use of the prior conviction was proper under the statute. The situation was similar in *Twentieth Century Fox*. More familiar authority in the patent law field for the principle of estoppel by judgment would be *Blonder–Tongue, supra*. However, none of these

cases suggest that a prior judgment may be used as *evidence* to establish the facts in a second suit against a *stranger* to the first suit. Indeed, in *Twentieth Century Fox*, the use of the judgment and necessary findings made in a prior case as evidence was specifically limited to those defendants present in the prior case and was not allowed as evidence against the other defendants. 194 F.2d at 850. Thus, *Twentieth Century Fox*, like *Blonder–Tongue*, supports the majority's position. Due process to establish facts in a second suit by a prior judgment is satisfied where a party had a full and fair opportunity to litigate an issue in the first suit and lost. Due process does not allow similar use against "those who never appeared in the prior action." *Blonder–Tongue*, 402 U.S. at 329, 91 S.Ct. at 1443.

Judge Hansen properly considered all of the proffered evidence *in camera* and we have considered the portions made available on appeal. In sum, we agree with Judge Hansen's assessment that the possibility of prejudice to the defendant and confusion of the jury was very high if Judge Hull's opinion were admitted inasmuch as the opinion was not fact evidence on the myriad issues in the second case. Moreover, prejudice is not merely in its possible improper treatment as evidence of the facts. Confusion could well have arisen by exposing the jury to another judge's statements on the law.

### 4. The '905 Patent

It is not understood and Mr. Mendenhall does not explain why the judgment of invalidity of the '905 claims should be vacated and a new trial granted by reason of exclusion of the proffered *Astec* exhibits. The ground of invalidity is the public use bar. Neither this

---

18. For example, the following excerpt is from Mr. Mendenhall's proffered cross-examination of defendants' expert:

Q. You don't know of any mistakes made in the Astec case, do you?

A. I didn't say there was, counsel. I say they [federal judges] make mistakes, just like everybody else makes mistakes.

Q. Is it correct, do you know that the federal judge in Tennessee construed the "means for" claims to cover anything with a presently existing capability of performing the claimed function?

A. I think he was wrong then.

In our view, it is fortunate that the trial court rejected this proffer. The alleged ruling on the claim construction in the Tennessee trial, as stated by Mr. Mendenhall's counsel, was legally erroneous. *See Johnston v. Ivac Corp.*, 885 F.2d 1574, 1579–80, 12 USPQ2d 1382, 1385–86 (Fed. Cir.1989) (rejecting argument that means-plus-function element of a claim covers any means for performing the required function).

court nor Judge Hull made a ruling on the issue of a public use bar respecting the '905 patent in the *Astec* case. Mendenhall's arguments are wholly insubstantial respecting the right to a new trial on the validity of the '905 patent.

### 5. *Conclusion*

█ We conclude that Judge Hansen committed no error of law and did not abuse his discretion in refusing to accept Judge Hull's opinion as substantive evidence on all overlapping issues in the two cases.

### D. *Conclusion on New Trial*

Having considered all of Mr. Mendenhall's arguments for a new trial, we conclude the district court did not err as a matter of law or abuse its discretion in denying plaintiff's motion for a new trial.

### IV.

### *Cedarapids' Cross-Appeal*

In its cross-appeal, Cedarapids contends that the district court erred in denying its motion for judgment notwithstanding the verdict that claims 12 and 13 of the '904 patent were not proved invalid for obviousness. Cedarapids reasons that claims 1–11 were held to be obvious and that claims 12 and 13 merely include conventional temperature limitations that are present in the prior art drum mixers. Therefore, the addition of conventional temperature limitations makes no difference respecting obviousness. It relies on the testimony of its expert and alleged admissions by plaintiffs that the temperatures were old in the art and could not support patentability. Most significant is the statement by plaintiff's counsel, "There is no difference from an obviousness viewpoint between Claims 12 and 13 and Claim 1."

Mr. Mendenhall does not respond on the merits. He discounts his counsel's statements at trial as "admissions" of obviousness or nonobviousness but otherwise does not dispute any of the above arguments. He merely states, "We agree with Cedarapids that the obviousness verdicts on Claims 1, 12 and 13 were inconsistent. . . . Reasonable jurors could not rationally reach different

conclusions." He then asserts the remedy for inconsistent verdicts is a new trial not the grant of JNOV.

Mr. Mendenhall misconstrues Cedarapids' position. Cedarapids seeks reversal of the verdicts that claims 12 and 13 of '904 are not invalid under 35 U.S.C. § 103 but not because of "inconsistency" between the verdict on claim 1 and the verdicts on claims 12 and 13. Cedarapids argues that, as a matter of law, claims 12 and 13 are invalid for obviousness (as well as claim 1) based on the prior art including prior art respecting the temperature limitations.

█ Not having challenged the verdicts of obviousness, and not being entitled to a new trial, Mr. Mendenhall has conceded on appeal that the record here supports the conclusions that claims 1–11 are invalid for obviousness. Further, he continues to argue to us respecting obviousness that there is no rational basis for reaching "different conclusions on claims 1, 12 and 13." He makes no argument going to the merits, stating only that there was "ample evidence" to support nonobviousness of all claims. The evidence cited is the testimony of a witness who merely stated he believed the patent office had considered all of the prior art raised by Cedarapids against Mr. Mendenhall's '904 and '905 patents. This does not negate the merits of Cedarapids' challenge. In view of these circumstances, we hold that claims 12 and 13 of the '904 patent were also proved invalid for obviousness.

### V.

### *CMI's Appeal*

Cedarapids is the assignee of two patents issued in the name of one of its engineers, Philip J. Schlarmann—United States Patents No. 4,165,184 (the '184 patent), an apparatus patent, and 4,318,619 (the '619 patent), a method patent. Schlarmann's inventions are directed to combining virgin aggregate and RAP in a "double drum" mixer.

Schlarmann recognized that the burning of smaller asphalt particles (fines) in the RAP was the primary contributor to blue smoke. His method and apparatus are improvements

on the devices and methods of parallel flow drum mixers where virgin aggregate is first introduced and heated and RAP is introduced later into the hot gas stream at a cooler point in the process. As described in the Schlarmann specifications, the RAP is not introduced directly into the hot gas stream, but is shielded upon entry by an inner sleeve or drum through which virgin aggregate is moving and being heated. As RAP slides down the hot surface of the inner drum, the fines are plasticized and adhere to larger recycle particles before entering the gas stream. Thus, fine particles, which otherwise would quickly incinerate and create blue smoke emissions, are eliminated or reduced.

CMI was found to have directly infringed all claims of the '619 method patent and claims 1–4 and 6–23 of the '184 apparatus patent. We will treat claim 1 of the '184 apparatus patent as representative of the claims found to be infringed by CMI.[19] On appeal CMI contends that:

1. its apparatus does not satisfy the "preheat" limitation required by all claims found to be infringed;

2. its apparatus has one drum, not two;

3. there is no evidence that it directly infringes the '619 method; and

**19.** Cedarapids argues that other claims are broader. However, we need not address these claim differentiations. Claim 1 reads:

In apparatus for use in hot mix recycling in which aged asphaltic concrete pavement is removed and sized to provide an aged mix, *then heated to a temperature less than the destructive temperature of its old asphalt but sufficient to at least begin its rejuvenation,* and thereafter combined with heated fresh aggregate and fresh asphalt, *the apparatus including a first drum having upstream and downstream axial ends,* means for supporting the first drum in an attitude inclining downwardly in a direction from its upstream to its downstream end, means for rotating the first drum about its axis effective together with said inclination to move material introduced into the first drum adjacent its upstream end in said direction to adjacent the downstream end, means to assist retention of material introduced therein as aforesaid on and its elevation by the first drum interior walls during said material movement, and means disposed adjacent the downstream end of the first drum for removal of material

4. it has been deprived of its property without due process of law.

The district court denied CMI's motion for judgment despite the verdicts.

We address each of CMI's contentions *seriatim.*

## A. The "Preheat" Limitation

All of the claims of both Schlarmann patents contain a limitation that RAP must be "heated to a temperature less than the destructive temperature of the asphalt but sufficient to at least begin rejuvenation" before it is mixed with fresh aggregate and asphalt. There is no dispute that this preheat limitation is met in the accused device if given a straightforward reading. CMI contends, however, that its device does not preheat the RAP to a temperature as high as in a prior art reference, the Jakob's patent (U.S. Patent No. 4,075,710), and that during prosecution Cedarapids distinguished Jakob on the ground of "inadequate heating" of the RAP. Therefore, per CMI, the preheating requirement of both Schlarmann patents must be interpreted to mean something more than Jakob, and when so interpreted CMI cannot infringe either Schlarmann patent. We cannot accept CMI's convoluted argument.

therefrom, the improvement comprising: *a second drum having corresponding upstream and downstream ends, a downstream portion of the second drum extending into an upstream portion of the first drum through the upstream end thereof,* the downstream end of the second drum opening into the first drum, said upstream portion of the first drum spacedly enveloping said downstream portion of the second drum, material in the first drum being introduced into the space between said upstream and downstream portions of the first and second drums, the second drum being supported for rotation about its axis and for movement in said direction of material introduced into the second drum adjacent its upstream end to its downstream end and into the first drum for combination with material in the first drum; and means carried by the interior walls of the second drum effective to assist retention of material introduced therein as aforesaid on and its elevation by the second drum interior walls during said material movement. [Emphasis added]

In Claim 6, the *second* drum assembly spacedly envelopes the *first* drum assembly.

Claim interpretation is a question of law that we review *de novo*. *Senmed*, 888 F.2d at 818, 12 USPQ2d at 1511. We give the terms of the claims in issue their ordinary meaning, unless it is established that the inventor used them differently. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir.1984). CMI argues that the patent's prosecution history shows a different usage is intended, citing *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580, 6 USPQ2d 1557, 1560–61 (Fed.Cir.1988). We disagree. The isolated comments contained in multi-paragraph remarks distinguishing the Jakob reference, which neither mention nor relate to the specific claim language, provide no guidance here to interpretation.

The question here is simply whether there is substantial evidence that RAP in the CMI drum mixers is heated "to a temperature less than the destructive temperature of its old asphalt but sufficient to at least begin its rejuvenation," and the evidence is more than sufficient to support that necessary finding. A Cedarapids engineer testified that RAP contacted the CMI deflector ring (and an identical structure in the Cedarapids drum mixer) for one or two seconds. Schlarmann testified that this time was sufficient to rejuvenate, *i.e.*, plasticize, the fine asphalt particles, causing them to adhere to the larger RAP particles before the RAP is introduced into the hot gas stream. CMI's promotional literature touted the effectiveness of its deflector ring in "protecting [RAP] from hot gas stream, reducing blue smoke problems"—the very problem addressed and solved by the invention of the Schlarmann patents.

There is substantial evidence that the preheat limitation is satisfied.

B. *The "Two Drum" Limitation*

The CMI structure is illustrated below:

CMI contends that this structure does not infringe the claims because it has only a deflector ring in a single drum and does not satisfy the limitations requiring the presence of a "first drum" into which a portion of a "second drum" extends. CMI characterizes the invention as requiring a "drum within a drum."

Cedarapids' expert testified that the structure on the left up to where it surrounds the deflector ring is the first drum and the structure on the right including the deflector is the second drum which extends into the first drum. There is no limitation in the claim respecting how much of the second drum must be extended into the first drum. The testimony of CMI's president recognized

a functional distinction between these two sections of the CMI mixer, distinguishing between its "mixing section" (left side) and "drier section" (right side). There is no dispute that RAP is introduced "into the space between the upstream and downstream portions" of these two sections, as is required by claim 1. Further, independent claim 21 and its dependent claims substitute the requirement of mixing chambers for claim 1's requirement of drums. In view of this evidence, we cannot hold that the jury could not reasonably find that the accused structure meets all limitations of the claims.

## C. *Infringement Of The Method Patent*

The district court's judgment states that CMI "has directly infringed all claims" of the '619 method patent, and that it "has not actively induced infringement of any claim" of either Schlarmann patent. This judgment was entered on the jury's special verdicts respecting direct infringement and inducement. Apparently there was no issue as to CMI's liability as a contributory infringer. CMI argues that because it is merely a manufacturer of asphalt plant equipment, and does not itself make asphalt, the judgment that it has directly infringed the method patent is based on a jury verdict unsupported by substantial evidence.

The '619 patent claims a method for recycling RAP in the production of HMA. The manufacture and sale of a drum mixer cannot directly infringe this method patent; it is directly infringed only when such drum mixers are used in the United States to make HMA by the claimed method. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374, 21 USPQ2d 1321, 1332 (Fed. Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992). Although the manufacturer of a drum mixer may be liable for inducement of infringement under 35 U.S.C. § 271(b) (1988), Cedarapids has not challenged in its cross-appeal the judgment that CMI is not liable on this theory. The only question before us is whether the evidence of record is legally sufficient to prove CMI has *directly* infringed the '619 method patent.

The record shows that CMI annually staged open houses for its customers. It admits that at some of these events it used its mixers for demonstration purposes to make HMA. However, it would have to be inferred that it did so after the patent issued as there is no testimony directly on the point. We cannot hold that the jury could not reasonably make that inference. Accordingly, we must affirm the judgment that CMI has directly infringed the asserted method claims.

## D. *Due Process*

CMI argues that given the complexity and length of the trial and the confusion and inconsistency manifested by the verdicts, the judgment entered on the jury's verdicts has deprived the plaintiffs of their property without due process of law, in violation of the Fifth Amendment. To the extent that CMI contends that it has been deprived of its "property right" in the '904 and '905 patents without due process, that contention is disposed of by our holding in Part III(D). CMI points to no confusion or internal inconsistencies involving the verdicts on the Schlarmann patents on which it was held liable.

## VI.

### *Conclusion*

We affirm the judgment that all claims of the '905 patent and claims 1–12 of the '904 patent are invalid. On Cedarapids' cross-appeal, we reverse the judgment and hold claim 13 of the '904 patent is invalid for obviousness. In view of this disposition, we need not address other issues raised by the parties. On CMI's appeal, we affirm the judgment that CMI has infringed all claims of Schlarmann '619 patent and all claims but claim 5 of the Schlarmann '184 patent.

## VII.

### *Costs*

Costs to Cedarapids.

*AFFIRMED–IN–PART* and *REVERSED–IN–PART.*

**1580**

MAYER, Circuit Judge, dissenting.

I believe the district court abused its discretion when it granted Cedarapids' motion to exclude reference to the earlier case of *Mendenhall v. Astec Industries, Inc.,* 13 USPQ2d 1913, 1988 WL 188449 (E.D.Tenn. 1988), *aff'd,* 891 F.2d 299 (Fed.Cir.1989), addressing the validity of the '904 and '905 patents. The trial court purportedly based its exclusion of the proffered evidence on Federal Rule of Evidence 403. But it erred in weighing the probative value of the evidence against the potential for prejudice by not considering precedent and by making impermissible presumptions about the ability of the jury to evaluate the evidence.

The admission of evidence is a procedural matter, but the type of evidence at issue here, a prior adjudication of patent "validity," is of a kind directly related to patent law. So while the precedent of the Eighth Circuit controls as to purely procedural matters, *see Panduit Corp. v. All States Plastic Manufacturing Co.,* 744 F.2d 1564, 1574, 223 USPQ 465, 471 (Fed.Cir.1984), the law of the Federal Circuit informs our decision as well because the matter is uniquely pertinent to patent law. *See Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 858, 20 USPQ2d 1252, 1259 (Fed.Cir.1991). A trial court's decision to exclude evidence under Rule 403 is entitled to great deference, and will not be reversed absent a clear and prejudicial abuse of discretion, *United States v. Abodeely,* 801 F.2d 1020, 1025 (8th Cir.1986); such an abuse has been amply shown in this case.

We have uniformly held that evidence of prior holdings' of validity is to be given weight in subsequent proceedings, though not necessarily preclusive effect. *Stevenson v. Sears, Roebuck & Co.,* 713 F.2d 705, 711, 218 USPQ 969, 974 (Fed.Cir.1983); *Gillette Co. v. S.C. Johnson & Son, Inc.,* 919 F.2d 720, 723, 16 USPQ2d 1923, 1926 (Fed.Cir. 1990). The Supreme Court also recognized the value of such evidence in *Radio Corporation of America v. Radio Engineering Laboratories, Inc.,* 293 U.S. 1, 7, 55 S.Ct. 928, 930, 79 L.Ed. 163 (1934), when it said that if there is a prior decision upholding a patent, that decision is persuasive in a second suit where the evidence is essentially the same.

*Stevenson* said that "the doctrine of stare decisis is generally an inappropriate one in patent litigation," but it also said, "To be sure, a prior holding of 'validity' should be given weight in a subsequent suit on the issue of 'validity.'" 713 F.2d at 711, 218 USPQ at 974. A prior decision is not "to be ignored." *Id.* at 711, 218 USPQ at 975. *Stevenson* relied on the rule in *American Photocopy Equipment Co. v. Rovico, Inc.,* 384 F.2d 813, 815, 155 USPQ 119, 120 (7th Cir.1967), that the "infringer has the burden of showing that there is a material distinction between his case and the prior case holding the patent 'valid.'" 713 F.2d at 711 n. 5, 218 USPQ at 974 n. 5. This court subsequently has clarified the notion that a prior holding of validity does not "strengthen" the presumption of validity or change the burden on the infringer to establish invalidity, *see Shelcore, Inc. v. Durham Industries, Inc.,* 745 F.2d 621, 627, 223 USPQ 584, 588 (Fed.Cir.1984), but *Stevenson* did adopt the essence of *Rovico,* that a prior holding of patent validity is to be given weight. That has never been questioned. The amount of weight to accord the earlier decision will vary, of course, depending on the amount and quality of additional prior art or other evidence that is produced in the subsequent suit. 713 F.2d at 711 n. 5, 218 USPQ at 974 n. 5 (citation omitted). "If, however, the record in the second suit is substantially identical to the record produced in the first suit, then it is extremely likely that the court will give its prior holding stare decisis effect." *Id.* It goes without saying that application of this principle contemplates that such prior holdings are to be before the later court so their weight can be assessed.

There is no difference between our case and *Stevenson* and *Gillette* just because in those cases the prior litigations included appellate judgments accompanied by precedential opinions, and in ours the judgment affirming the district court in *Mendenhall v. Astec* was accompanied by an opinion in nonprecedential form. An opinion is nonprecedential when the court decides that publication will not "add[ ] significantly to the body of law." Fed.Cir.R. 47.8(b). But though

opinions designated as nonprecedential may not be cited as precedent, nothing in the rule precludes use of a *judgment* of affirmance; that is precedential. All Mendenhall tried to do was use the prior case from the district court, and would advert only to this court's judgment affirming. Our rule on precedential opinions does not lessen the legal effect of a judgment, and a decision not to issue a precedential opinion implies nothing at all about the trial court's opinion. This court affirmed the judgment of the district court in *Mendenhall v. Astec.* Accordingly, it is perfectly proper, and consistent with the *Stevenson* line of cases, for Mendenhall to put the opinion of the district court and this court's judgment of affirmance before the jury.

Mendenhall also needed the evidence to attack the credibility of Cedarapids' patent law expert who Cedarapids admitted was its most important witness, and who testified for approximately 22½ hours. The evidence of the earlier adjudication might well have enhanced the testimony of a counter-expert hired by Mendenhall to refute Cedarapids' expert. Mendenhall's expert's testimony in contradiction of the conclusions of Cedarapids' expert would likely not be of the same calibre and impact as would evidence that a federal district judge, objective and disinterested, came to the opposite conclusion after examining the same or very similar evidence as Cedarapids' expert. The jury was entitled to know as well that he did not even examine the *Mendenhall v. Astec* case or opinion, while Mendenhall's expert did, and used it to support his own independent conclusions. *See* Fed.R.Evid. 705 ("The expert may in any event be required to disclose the underlying facts or data [supporting the opinion] on cross-examination."). Cedarapids' assertion that this evidence would have been irrelevant to the cross-examination of its expert is simply insupportable. There was no other evidence available to Mendenhall that would have been as effective to attack this witness' credibility while bolstering the credibility of its own expert. *See Charter v. Chleborad,* 551 F.2d 246, 249 (8th Cir.1977) (where claim rests in part on the credibility of an expert, exclusion of evidence asserted to counter impeachment of the expert affects a substantial right of the party).

The Advisory Committee Note to Federal Rule of Evidence 403 states that a court must balance the probative value of *and need for* the evidence against the harm *likely* to result from its admission. The district court did not compare the record of the *Astec* case to the evidence that would be before it in order to assess the correspondence of the previous case with this one. Indeed, there is no indication the trial court even considered the probative value of, or need for, the evidence offered on the prior adjudication of validity; this is not the balancing required by Rule 403.

The district court also erred in its analysis of the likelihood of unfair prejudice to Cedarapids if Mendenhall's evidence were admitted. By Rule 403 the probative value of the evidence must be *"substantially outweighed* by the danger of unfair prejudice ..." before it may be excluded. (Emphasis added.) " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Rule 403 Advisory Committee Note. The "improper basis" proposed by the court as the reason for exclusion was the possibility that the jury would ignore its duty to examine all of the evidence before it and blindly follow the conclusion of the other district court. The court said, "I'm greatly concerned that they would say, 'Look, a federal judge has looked at these similar claims and has said so-and-so, and we'll just go along with that decision,' and I think it's an invitation for the jury to abdicate their responsibilities...." But a prior decision on patent validity is not the kind of "improper basis" contemplated by the rule.

The jury is presumed to take its role seriously and to carry out its fact-finding function competently and thoroughly. *Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985) (the Court presumes that jurors are "conscious of the gravity of their task" and pay close attention and carefully follow a judge's instructions); John Guinther, *The Jury in America* 101–102 (1988) (concluding from empirical studies conducted by the Roscoe Pound

Foundation and others that juries "overwhelmingly take their duties seriously," are open-minded, and "evidence-oriented."). " 'Jurors, if properly instructed and treated with deserved respect, bring collective intelligence, wisdom, and dedication to their tasks, which is rarely equalled in other areas of public service....' " *SRI International v. Matsushita Electrical Corp.,* 775 F.2d 1107, 1128 n. 7 (Fed.Cir.1985) (Markey, C.J., additional views) (quoting *In re U.S. Financial Sec. Litigation,* 609 F.2d 411, 430 (9th Cir. 1979)). And the dismissive observation about the capabilities of the jury reflects more on the court and counsel than on the citizens who were called to interrupt their lives to resolve this case. *See, e.g.,* Brookings Institution, *Charting a Future for the Civil Jury System; Report from an A.B.A./Brookings Symposium* 18 (1992) ("[N]o case is inherently too complex for juries to decide. In our view, if juries find issues and facts too complex, it is because the lawyers have failed to present their cases clearly or judges have failed to structure the proceedings in a way that would simplify matters for the jury to understand them."). The essential constitutional right to a jury trial is founded on the trust reposed in the jury to weigh the evidence and reach just conclusions. To assume that there is a significant danger that the jury will abdicate its responsibility by placing undue reliance on another court's opinion is impermissible.* For the court to further conclude that the danger of the jury attaching undue weight to the evidence *substantially outweighs* its clear probative value and need only compounds the error.

I respectfully suggest that it is the job of a district court to guide the jury. Rule 403 requires the court to assess the likely effectiveness of a limiting instruction to the jury to alleviate any perceived danger of prejudice. Rule 403 Advisory Committee Note. That would have been the appropriate course to take here. The trial court readily could have instructed the jury that the evidence offered was not conclusive or binding but was available for such weight as the jury saw fit to give it: for example, how it might affect the bases for the conclusions of Mendenhall's expert. *See* Fed.R.Evid. 705.

I see no great danger of prejudice in asking a witness about the bases of his opinions, including why he chose not to examine a prior judicial decision on the validity of the patent at issue, or asking why his conclusions on the patent are different. If the witness cannot distinguish the record he has from what has previously been examined by another court, the jury is entitled to know this in assessing his credibility. On the other hand, if the witness can provide cogent reasons, such as significant new or significantly different evidence available to him, there is no danger that the jury will misplace emphasis on the prior decision. The trial court did instruct the jury in response to a brief mention of *Mendenhall v. Barber–Greene Co.,* No. 80–C–6747 (N.D.Ill. Oct. 24, 1990) (in which Mendenhall also prevailed), and apparently thought it competent to obey. It escapes me why the court did not consider the possibility that a pointed instruction would have guided the jury in considering the proposed evidence.** And if in the end the jury

---

\* In fact, the rules of evidence themselves exhibit greater trust in the jury by allowing the admission of judgments of prior criminal felony convictions to prove any fact essential to sustain a judgment in subsequent litigation. *See* Fed. R.Evid. 803(22). Evidence of prior adjudications has also routinely been allowed before a jury in complex antitrust litigation. In *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951), the Supreme Court held that parties "are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based."

\*\* In applying the *Emich Motors* "rule," the Eighth Circuit recognized that what is important is that

the jury be given adequate guidance to properly assess the evidence. In *Twentieth Century Fox Film Corp. v. Brookside Theatre Corp.,* 194 F.2d 846 (8th Cir.1952), the district court allowed the offering party to read portions of the final decree, factual findings and conclusions of law from the previous decision into the record. The court of appeals saw no error, pointing out that the trial court instructed the jury that it could not base its decision simply on the prior outcome. The court repeated the trial court's jury instruction, " 'In admitting these findings in evidence for your consideration, you are charged that they of themselves do not establish any fact as to the activities of these defendants ...,' " and held that the contention that the admission of this evi-

were more favorably impressed by the views of the neutral and detached district judge than by the sponsored testimony of an expert, I see no harm. Indeed one might think that is as it ought to be in a case where a prior adjudication felicitously is available.

The requested evidence was the most probative available, and precedent weighs heavily on the side of admitting it. The danger of prejudice, to the extent it exists, could have been obviated by an appropriate instruction.

The trial court committed a prejudicial abuse of discretion by excluding the evidence, and denied Mendenhall a fair trial. I would vacate and remand for a new trial.

dence constituted error was "wholly without merit." *Id.* at 853.